IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLLEGENET, INC., a Delaware               03-CV-1229-BR
corporation,

          Plaintiff,                       OPINION AND ORDER

v.

XAP CORPORATION, a Delaware
corporation,

          Defendant.


JOHN D. VANDENBERG
MICHAEL N. ZACHARY
SCOTT E. DAVIS
STEPHEN J. JONCUS
SAMIR N. PANDYA
Klarquist Sparkman, LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, OR  97204
(503) 595-5300


1 - OPINION AND ORDER

**ARTHUR S. BEEMAN**
Dla Piper Rudnick Gray Cary
153 Townsend Street, Suite 800
San Francisco, CA 94107
(415) 836-2579

**CHRISTINE K. CORBETT**
**GREGORY J. LUNDELL**
**M. ELIZABETH DAY**
**WILLIAM G. GOLDMAN**
Dla Piper Rudnick Gray Cary Us, LLP
2000 University Avenue
East Palo Alto, CA 94303-2248
(650) 833-2141

**JESSICA L. ROSSMAN**
**SHYLAH R. ALFONSO**
**SUSAN E. FOSTER**
Perkins Coie, LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
(206) 359-3828

        Attorneys for Plaintiff

**ALEXANDER C. JOHNSON, JR.**
**STEPHEN S. FORD**
Marger, Johnson & McCollum, P.C.
1030 S.W. Morrison Street
Portland, OR  97205
(503) 222-3613

**LYNN H. PASAHOW**
**CHARLENE M. MORROW**
**VIRGINIA K. DeMARCHI**
**HECTOR RIBERA**
**HENRY Z. CARBAJAL III**
**KIMBERLY I. CULP**
**MASHHOOD RASSAM**
**MICHAEL A. SANDS**
**SARA JENKINS**
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
(650) 988-8500

2 - OPINION AND ORDER

**DAVID D. SCHUMANN**
Fenwick & West, LLP
275 Battery Street
San Francisco, CA 94111
(415) 875-2300

      Attorneys for Defendant

**BROWN, Judge.**

     This matter comes before the Court on Defendant XAP
Corporation's Motion for Summary Judgment (#237) and Plaintiff
CollegeNET, Inc.'s Cross-Motion for Partial Summary Judgment
(#238) in which the parties seek summary judgment as to
Plaintiff's Second Claim for Unfair Competition brought under
both the Lanham Act, 15 U.S.C. § 1125(a), and common law.
Plaintiff's Motion to Strike (#299) the Declaration of J. Trevor
Hughes is also before the Court.

     The Court heard oral argument on May 8, 2006, and took these
Motions under advisement.

     For the reasons that follow, the Court **DENIES** Defendant's
Motion for Summary Judgment, **GRANTS in part** and **DENIES in part**
Plaintiff's Motion for Partial Summary Judgment, and **DENIES**
Plaintiff's Motion to Strike.


## FACTUAL BACKGROUND

     The following relevant facts are taken from the parties'
respective concise statements of material fact and are

3 - OPINION AND ORDER

undisputed.

Plaintiff provides online college admission application services to college-bound students and to the colleges and universities (hereinafter referred to collectively as colleges) to which the students intend to apply.  The colleges pay Plaintiff for these services.

Defendant provides online college application and admission processing services to college-bound students through approximately 30 "Mentor" websites.  Defendant's paying customers for online services are state agencies, departments of education, and/or student-loan guarantee authorities; *e.g.,* banks and other lending institutions (collectively referred to as commercial institutions).  Defendant does not charge colleges directly for these online services.

Some of Defendant's Mentor websites include a web page that contains the statement:  "Personal data entered by the User will not be released to third parties without the user's express consent and direction."  In addition, some of the Mentor websites include "account set-up screens" that contain the following statement:  "The information you enter will be kept private in accordance with your express consent and direction.  Click here to view the Privacy Statement."  Some of the Mentor websites also ask the following "opt-in question" of college applicants:  "Are

you interested in receiving information about student loans or financial aid?"  The personal data of some applicants who answer "yes" to the opt-in question is shared with the commercial institutions that are Defendant's paying customers.

As of August 2005, Defendant determined more than 1300 colleges in different geographic locations were participating in Defendant's Mentor System, and Defendant had developed online applications for more than 800 colleges.

## MOTION TO STRIKE THE DECLARATION OF J. TREVOR HUGHES

Plaintiff moves to strike the Declaration of J. Trevor Hughes, which Defendant submitted with its Response to Plaintiff's Motion for Summary Judgment.

Hughes opines Defendant's privacy-policy statement as it has evolved is not misleading because students who read the statement while using Defendant's Mentor website to apply for college and also answer "yes" to the opt-in question requesting financial-aid information "would reasonably expect to give some personal information in order to receive the requested information." Hughes also opines Defendant's view that it is a "bad idea" to include an affirmative statement in the privacy policy regarding disclosure of personal information is consistent with industry practices.

5 - OPINION AND ORDER

Plaintiff contends Hughes is not qualified to offer the above opinions and, in any event, the opinions are not reliable.

Hughes works in the field of informational privacy and is a frequent world-wide lecturer and speaker on privacy and e-commerce law.  He is presently the Executive Director for the International Association of Privacy Professionals.  From May 1995 to March 2000, he was corporate counsel for UnumProvident Corporation.  From March 2000 to August 2001, he was Director of Privacy and Corporate Counsel at Engage, Inc., an online media and software company.  In these positions, Hughes advised the corporations on privacy issues and developed private policies and practices.

On this record, the Court finds Hughes is qualified to give his opinion regarding privacy issues.  Moreover, Plaintiff's concerns regarding the reliability of Hughes's opinions are pertinent only to the weight they should be given rather than to their admissibility.  Accordingly, the Court **DENIES** Plaintiff's Motion to Strike (#299).

## SUMMARY JUDGMENT MOTIONS

### Standards

Fed. R. Civ. P. 56©) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving

party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required.  *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the

court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

### Discussion

The issues raised in the parties' summary judgment motions overlap. The Court, therefore, addresses the parties' motions together.

The Court also notes Oregon courts follow federal law when deciding common law, unfair competition claims. *See CollegeNet, Inc. v. Embark Com., Inc.,* 230 F. Supp. 2d 1167, 1177 (D. Or. 2001)(citing *Classic Instruments, Inc., v. VDO-Argo Instruments*, 73 Or. App. 732, 745 (1985), *review denied,* 300 Or. 111 (1985)). Accordingly, the Court's analysis of Plaintiff's Lanham Act claim is determinative as to Plaintiff's common law, unfair competition claim.

### 1.  Issues

Plaintiff asserts Defendant engages in unfair competition under federal law by making false representations to its customers regarding the privacy of confidential information provided by college-bound students who use Defendant's XAP System when they apply for college. According to Plaintiff, Defendant's allegedly false privacy-policy statements place Plaintiff at a competitive disadvantage in promoting the use of its online application and admissions processing services to colleges.

8 - OPINION AND ORDER

Colleges must pay to use Plaintiff's services, but they can
obtain Defendant's services free of charge because the commercial
institutions offering financial aid to students pay for
Defendant's services.   Plaintiff further alleges Defendant's
privacy-policy statements give colleges:

> the false impression that [Defendant] does
> not and will not sell, provide or make
> available personal student data to third
> parties for any purpose unless a student
> first expressly consents and directs
> [Defendant] to do so.

Pl.'s Fourth Amended Compl. ¶¶ 60-64.  According to Plaintiff,
Defendant's false and misleading privacy-policy statements

> are likely to continue to cause confusion,
> deception and mistake among at least a
> substantial segment of the relevant market of
> Colleges constituting [Plaintiff's] customers
> or potential customers," resulting in a
> "diversion of sales to [Defendant] . . . .

Pl.'s Fourth Amended Compl. ¶¶ 67, 68.

     Defendant denies its privacy-policy statements are false and
misleading under federal law and alleges Plaintiff and Defendant
are not competitors in any event.

     The specific issues before the Court at this time are
whether:

     a.   Plaintiff has standing to assert a Lanham
          Act claim;

     b.   Defendant misrepresents in its privacy policy that
          personal data provided by college applicants will not
          be made available to third parties "without express

consent and direction";

c.    Defendant's alleged misrepresentations are made in "a commercial advertising or promotion";

d.    Defendant's alleged misrepresentations deceive or have a tendency to deceive a substantial segment of persons using the XAP System;

e.    Defendant's alleged misrepresentations are material to the decision of colleges to use the Defendant's products and services;

f.    Defendant's alleged misrepresentations cause Plaintiff a loss of sales to and/or goodwill from colleges;

g.    Defendant's products and services are sold in inter-state commerce.

2.    **Analysis.**

   a.    **The Lanham Act.**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),

provides in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> * * *
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any

10 - OPINION AND ORDER

person who believes that he or she is or is likely to be damaged by such act.

To prove a Lanham Act false-advertising claim, Plaintiff must establish:

> (1) Defendant made a false statement of fact about its own or another's product in a commercial advertisement;
>
> (2) the statement actually deceived or had the tendency to deceive a substantial segment of Defendant's audience;
>
> (3) the deception is material, in that it is likely to influence the purchasing decision;
>
> (4) Defendant caused its falsely advertised product to enter interstate commerce; and
>
> (5) Plaintiff has been or is likely to be injured as the result of the false statement either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public.

*Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003).

**b.    Standing**.

Defendant moves for summary judgment that Plaintiff lacks standing to bring this action under the Lanham Act because Defendant does not compete for Plaintiff's business.  In addition, Defendant asserts Plaintiff's Lanham Act claim is an improper attempt to assert a private attorney general claim seeking to vindicate the rights of third parties; *i.e.*, college

11 - OPINION AND ORDER

applicants whose personal data allegedly is provided to third parties under false pretenses.

To have standing pursuant to the "false-advertising" prong of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must show:  "(1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (citing *Halicki v. United Artists Commc'n, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987)).

Defendant asserts it does not compete with Plaintiff because each party offers different services to different customers; *i.e.,* Plaintiff only sells online admission application services to colleges while Defendant, in addition to offering online admission application services to students and colleges, also offers other services that "enable students to engage in career planning, match college attributes to [the students'] objectives, plan to meet college admission requirements . . . and explore options for financing higher education."  In addition, Defendant sells its product to commercial institutions.  Moreover, Defendant's customers are free to use Plaintiff's online admission application forms even

though they purchase Defendant's other services.

Plaintiff, however, contends Defendant is a "fierce
competitor."  In his Declaration, Patrick Carmody, Plaintiff's
Vice-President of Sales, states the "major third party provider
of online admissions application services are [Defendant],
[Plaintiff], ApplyYourself, The Princeton Review, and Common
Application."  He also states "[Plaintiff] frequently compete[s]
with [Defendant] in response to Requests for Proposals," and has
"lost business from customers to [Defendant]."  In his
Declaration, Jim Wolfston, Plaintiff's founder and President,
states "while [Defendant] and [Plaintiff] go about it
differently, both companies vigorously compete to out-source web-
based college admissions applications."  Plaintiff contends the
nature of the competition between the parties also is reflected
in the June 2002 email between Defendant employees John Shin and
Mike Tressel in which Shin notes "CollegeNet is busy trying to
get [University System of Georgia schools] . . . on board . . . .
There is definitely a fight for market share in our industry."

On this record, the Court concludes genuine issues
of material fact exist as to whether Plaintiff and Defendant are
competitors and whether Plaintiff, therefore, has suffered the
necessary commercial injury sufficient to establish standing to
bring fraudulent advertising claim against Defendant.  In

13 - OPINION AND ORDER

addition, the Court also concludes the record is not sufficiently developed to make a determination whether Plaintiff also is barred from bringing this claim as a private attorney general if it does not compete directly with Defendant.  *See Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 78 (3d Cir. 1998)("As long as the private attorney general suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed.").  Until the factual issue as to whether the parties are competitors is resolved, it is premature to address Defendant's argument that Plaintiff also lacks standing to bring a Lanham Act unfair competition claim as a private attorney general seeking to vindicate the rights of students based on alleged injury unrelated to competition between the parties.

Accordingly, the Court denies Defendant's Motion for Summary Judgment to the extent it is based on Plaintiff's lack of standing.

**c.  Misrepresentation:  Express Consent and Direction.**

Plaintiff moves for partial summary judgment that Defendant's "privacy-policy statements" presented to students who use Defendant's online admission application program are "literally false."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  In turn, Defendant moves for

14 - OPINION AND ORDER

summary judgment that its privacy-policy statements are not false and, in any event, do not constitute "statements of material fact" about the services that Defendant sells because they merely describe how Defendant handles the information provided by students who use Defendant's online services.

It is undisputed that Defendant makes the following representations to those student applicants who use certain Mentor websites to submit online college admission applications: "Personal data entered by the User will not be released to third parties without the user's express consent and direction."  In addition, some of Defendant's website "account set-up screens" contain the following statement:  "The information you enter will be kept private in accordance with your express consent and direction."

In many cases, Defendant's websites also ask the students to answer "yes/no" as to whether they wish to receive information about student loans or financial aid.  The students are not advised expressly that if they answer "yes," they are authorizing Defendant to share their personal data with commercial enterprises that are in the business of providing students with financial aid and student-loan products and services.  Defendant, however, contends there is "nothing 'false' or 'misleading' about [Defendant's] statements regarding its [privacy] policy."

15 - OPINION AND ORDER

Defendant also asserts the colleges and universities to which the student applies are aware that a "yes" answer to the "opt-in question" permits the student's personal information to be sold to third parties.  In any event, Defendant argues its statement regarding the privacy of students' personal data is not a "statement of fact" regarding the services it offers for sale. The privacy policy merely describes how Defendant "handles information provided by [students]."  Accordingly, Defendant maintains the statements in its privacy- policy address "matters that are incidental, not intrinsic, to the company's products and services."

In response, Plaintiff contends Defendant's privacy-policy statements are literally untrue because the decision by a student to "opt-in" and thereby to receive financial-aid and student-loan information is not the promised "express consent and direction" needed to authorize the disclosure of a student's personal data to third parties.  According to Plaintiff, Defendant's statement that it will not provide personal data to third parties without the student's express consent and direction is, therefore, "literally untrue." *See Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 944 (3d Cir. 1993)("[T]he test for literal falsity is simple[]; if a defendant's claim is untrue, it must be deemed literally false.").

16 - OPINION AND ORDER

The Court is not persuaded by Defendant's argument that its privacy-policy statements are merely incidental rather than intrinsic; *i.e.,* fundamental to its products and services. Identity theft associated with use of the internet to buy products and services is a common occurrence.  Promises of confidentiality of information provided over the internet are certainly more than incidental; *i.e,* "minor" matters.  *See Webster's II New Riverside Univ. Dictionary* (1998) 618 ("incidental" means "of a minor, casual or subordinate nature."). Nevertheless, whether Defendant's promises are fundamental to the products and services that Defendant offers for sale has yet to be determined.

Based on this record, the Court concludes genuine issues of material fact exist as to whether a student "expressly consents" to release Defendant from its promise of confidentiality and nondisclosure of personal information merely by agreeing to receive information regarding financial aid and student loans. Accordingly, the Court denies the Motions for Summary Judgment of both Plaintiff and Defendant as to whether Defendant's privacy-policy statements are literally false.

**d.    Commercial Advertising or Promotion.**

Before a plaintiff can establish a defendant has violated the Lanham Act, the Ninth Circuit has held the plaintiff must

17 - OPINION AND ORDER

satisfy the requirements of § 43(a)(1)(B) by showing the defendant's alleged "commercial advertising or promotion" involves "(1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services," and "(4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).  The representations "need not be made in a 'classic advertising campaign' but may consist instead of more informal types of 'promotion.'" *Id.*

Here Plaintiff asserts it is entitled to summary judgment that Defendant's privacy-policy statements meet all four requirements of § 43(a)(1)(B) and, therefore, constitute "commercial advertising or promotion" under the Lanham Act.

On the other hand, Defendant seeks summary judgment on the grounds that its privacy-policy statements do not meet the second, third, and fourth requirements of § 43(a)(1)(B).

(1) <u>Commercial Speech</u>.

The parties do not dispute Defendant's privacy-policy statements constitute commercial speech.

(2) <u>Commercial Competitors</u>.

As noted, the parties disagree as to whether they

18 - OPINION AND ORDER

compete with each other, and the Court has concluded genuine issues of material fact exist as to this issue.

(3)  Influencing Customers to Buy.

Defendant seeks summary judgment as to this issue on the grounds that Defendant's privacy-policy statements

> are not 'advertising' or 'promotion' as those
> terms are commonly understood, [they] are not
> made to influence customers to 'buy' (or even
> use) [Defendant's] services, and/or they are
> not disseminated sufficiently to the relevant
> purchasing public.

Def.'s Mem. in Supp. of Mot. for Summ. J. at 10.  Defendant's premise is that commercial institutions that offer financial aid and student-loan services are the "purchasing public" because they pay for the services whereas the privacy-policy statements are directed to colleges and students who pay nothing and, consequently, are not influenced to buy anything.

Plaintiff counters "Defendant markets its Mentor sites to colleges and encourages them to participate, . . . brags in press releases about the number of colleges it has captured, . . . and solicit[s] students to establish accounts."  Pl.'s Mem. in Supp. of Mot. for Summ. J. at 13.  In any event, Plaintiff argues Defendant's business "depends on [the] successful recruitment of both colleges and students to use its websites and its online form" in order to "provide [the commercial institutions] the personal data it has promised" from the

19 - OPINION AND ORDER

students who answer "yes" to the opt-in question.

On this record, the Court concludes genuine issues of material fact exist as to the benefit derived by Defendant either directly or indirectly in advertising and promoting its privacy-policy statements to students and colleges.  Although the ultimate purchasers of Defendant's products and services are the commercial institutions, their incentive to buy may be influenced by the number of colleges that rely on Defendant's privacy-policy statements when deciding whether to use Defendant's XAP System and the number of students who are likely to answer "yes" to the opt-in question on the understanding that their personal information will remain private unless they indicate otherwise.

Accordingly, the Court concludes genuine issues of material fact exist as to whether Defendant's privacy-policy statements are intended to influence colleges and students to use Defendant's products and services and, as a result, to influence commercial institutions to pay for them.

(4)  Dissemination to the Purchasing Public.

Plaintiff presents substantial evidence that Defendant places its privacy policy describing the Mentor System on its websites, recites the policy on some "account set-up screens" seen by students, and promotes its privacy policy either verbally or in writing at some of the Mentor site kick-off meetings.

Plaintiff asserts Defendant widely disseminates its privacy policy to colleges and students in order to enhance its competitive position with the commercial institutions that are Defendant's potential paying customers.

Defendant, however, disputes much of Plaintiff's evidence and argues its privacy-policy statements are not actionable because they are not disseminated directly to the commercial institutions who purchase Defendant's products and services.

On this record, the Court concludes genuine issues of material fact exist as to the extent to which Defendant disseminates its privacy-policy statements either directly or indirectly.

In summary, the Court concludes on this record that Defendant's privacy-policy statements constitute commercial speech as a matter of undisputed fact, and, therefore, the Court grants in part Plaintiff's Motion for Partial Summary Judgment to this extent. The Court, however, concludes genuine issues of material fact exist as to whether the parties are commercial competitors, whether Defendant's privacy-policy statements are made to influence purchasing decisions, and whether the privacy-policy statements are disseminated sufficiently to constitute advertising and promotion. Accordingly, the Court denies

21 - OPINION AND ORDER

Defendant's Motion for Summary Judgment and the remainder of Plaintiff's Motion for Partial Summary Judgment as to these issues.

   **e.  Tendency to Deceive.**

   Plaintiff asserts Defendant's privacy-policy statements are literally false and, therefore, are presumed to have a tendency to deceive. *See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 33 (1st Cir. 2000)("If the advertisement is literally false, the court may grant relief without considering evidence of consumer reaction.").  *See also McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.,* 938 F.2d 1544, 1549 (2d Cir. 1991)(When "the advertising claim is shown to be literally false, the court may enjoin the use of the claim 'without reference to the advertisement's impact on the buying public.'").  Accordingly, Plaintiff urges the Court to grant summary judgment that Defendant's privacy-policy statements have a tendency to deceive "if the Court grants summary judgment on the 'falsity' prong."

   *As noted,* Defendant denies its statements are literally false.  In any event, Defendant asserts any such presumption is rebuttable.  *See Southland Sod Farms v. Stover Seed Co.,* 108 F.3d at 1146 ("Because a reasonable jury could conclude, based on the evidence submitted by plaintiffs, that defendants' comparative

22 - OPINION AND ORDER

advertisement claims were deliberately false within the meaning
of § 43(a), plaintiffs may be entitled to a presumption of actual
consumer deception and reliance, and would therefore be entitled
to appropriate monetary relief unless defendants could rebut the
presumption.").

The Court already has concluded genuine issues of
material fact exist as to whether Defendant's privacy-policy
statements are literally false, and, therefore, genuine issues of
material fact exist as to whether Defendant's privacy-policy
statements are presumed to have a tendency to deceive consumers.
Accordingly, the Court denies both Defendant's Motion for Summary
Judgment and Plaintiff's Motion for Partial Summary Judgment on
this issue.

**f.   Materiality.**

A false statement is "material [if] it is likely to
influence the purchasing decision."  *Rice,* 330 F.3d at 1180.

The Court has found genuine issues of material fact exist as
to whether Defendant's privacy-policy statements are likely to
influence the decision of commercial institutions to buy
Defendant's products and services, and, as a result, genuine
issues of material fact exist as to whether Defendant's privacy-
policy statements are material.  Accordingly, the Court denies
both Defendant's Motion for Summary Judgment and Plaintiff's

23 - OPINION AND ORDER

Motion for Partial Summary Judgment as to this issue.

    **g.   Injury to Plaintiff.**

    Defendant moves for summary judgment on the ground that Plaintiff cannot show it has suffered injury as a result of unfair competition. Defendant bases its argument on the premise that Plaintiff and Defendant are not direct competitors. The Court, however, has concluded genuine issues of material fact exist as to whether Plaintiff and Defendant are competitors. The Court, therefore, concludes genuine issues of material fact exist as to whether Plaintiff has suffered injury as a result of Defendant's alleged unfair competition. Accordingly, the Court denies Defendant's Motion for Summary Judgment as to this issue.

    **h.   Interstate Commerce.**

    The parties agree Defendant's products and services are sold in interstate commerce. The Court, therefore, grants Plaintiff's Motion for Partial Summary Judgment as to this issue.

<u>**CONCLUSION**</u>

    For these reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (#237), **GRANTS in part** and **DENIES in part**

24 - OPINION AND ORDER

Plaintiff's Motion for Partial Summary Judgment (#238), and

**DENIES** Plaintiff's Motion to Strike (#299).

IT IS SO ORDERED.

DATED this 17th day of July, 2006.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge