IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLLEGENET, INC., a Delaware                    03-CV-1229-BR
corporation,

        Plaintiff,                              OPINION AND ORDER

v.

XAP CORPORATION, a Delaware
corporation,

        Defendant.


JOHN D. VANDENBERG
MICHAEL N. ZACHARY
SCOTT E. DAVIS
STEPHEN J. JONCUS
SAMIR N. PANDYA
Klarquist Sparkman, LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, OR  97204
(503) 595-5300

ARTHUR S. BEEMAN
Dla Piper Rudnick Gray Cary
153 Townsend Street, Suite 800
San Francisco, CA 94107
(415) 836-2579


1 - OPINION AND ORDER

**CHRISTINE K. CORBETT**
**GREGORY J. LUNDELL**
**M. ELIZABETH DAY**
**WILLIAM G. GOLDMAN**
Dla Piper Rudnick Gray Cary Us, LLP
2000 University Avenue
East Palo Alto, CA 94303-2248
(650) 833-2141

**JESSICA L. ROSSMAN**
**SHYLAH R. ALFONSO**
**SUSAN E. FOSTER**
Perkins Coie, LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
(206) 359-3828

                Attorneys for Plaintiff

**ALEXANDER C. JOHNSON, JR.**
**STEPHEN S. FORD**
Marger, Johnson & McCollum, P.C.
1030 S.W. Morrison Street
Portland, OR  97205
(503) 222-3613

**LYNN H. PASAHOW**
**CHARLENE M. MORROW**
**VIRGINIA K. DeMARCHI**
**HECTOR RIBERA**
**HENRY Z. CARBAJAL III**
**KIMBERLY I. CULP**
**MASHHOOD RASSAM**
**MICHAEL A. SANDS**
**SARA JENKINS**
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
(650) 988-8500

**DAVID D. SCHUMANN**
Fenwick & West, LLP
275 Battery Street
San Francisco, CA 94111
(415) 875-2300

      Attorneys for Defendant

**BROWN, Judge.**

      This matter comes before the Court on the parties' various evidentiary Motions (#436, #438, #467, #473) and Motions for Summary Judgment (#371, #372, #382, #386, #391).  On June 6, 2006, the Court heard oral argument on these Motions.

      For the reasons stated on the record during oral argument, the Court resolved all of the Motions to Strike and all other evidentiary objections related to the Motions for Summary Judgment.  The Court, therefore, **DENIES as moot** the Motions to Strike (#436, #438, #467, #473).

      For the reasons that follow, the Court:

      1.  **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Partial Summary Judgment (#371) of Infringement of U.S. Patent No. 6,560,042;

      2.  **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Partial Summary Judgment (#372) on Inequitable Conduct Defense;

      3.  **DENIES** Defendant's Motion for Summary Adjudication (#382) on Elements of CollegeNET's Patent Damages Claim;

      4.  **GRANTS in part** and **DENIES in part** Defendant's Motion for

3 - OPINION AND ORDER

Summary Judgment Adjudication (#386) on the Invalidity of Claims 21, 23, 24, 27, 28, and 31 of U.S. Patent No. 6,345,278 and of Claims 15, 16, 18, 31, 32, 33, 34, 35, 36, and 44 of U.S. Patent No. 6,460,042; and

5.   **DENIES** Defendant's Motion for Summary Judgment (#391) of Noninfringement.


## BACKGROUND

Plaintiff owns Patents 6,345,278 BI ('278) and 6,460,042 BI ('042).  The Patents describe a "Universal Forms Engine" named ApplyWebII, which Plaintiff designed to provide a more efficient way for a third-party forms servicer to process on-line forms such as college applications.  Defendant makes, uses, and sells a competing system called the XAP System. Plaintiff alleges Defendant's XAP System infringes multiple Claims in both the '278 and the '042 Patents.

The '278 Patent is described as follows:

> In general, the claims of the '278 patent concern systems and methods wherein an applicant, such as an applicant to a university, submits an application that is customized according to the preferences of the institution, via an online process. Information from a first application is stored in a database having certain defined characteristics, and some of the stored information is used to populate a subsequent application made by the applicant to a second

> institution, thus saving the applicant the
> burden of retyping information he or she has
> already provided.

The '042 Patent is described as follows:

> In general, the claims of the '042 patent
> are directed to processing customized forms
> and payment information, and providing
> information entered into the form to an
> institution in a format that the institution
> specifies, relieving the processing burden on
> the institution.

Pl.'s Opp'n to Mot. for Summ. J of Noninfringement at 2; Pl.'s

Fourth Amended Compl., Exs. A and B.

On October 29, 2004, Magistrate Judge Dennis J. Hubel

issued Findings and Recommendation (Construction Order 1)

construing certain terms of the Patents.  On March 7, 2006, this

Court adopted Judge Hubel's Findings and Recommendation on the

whole, but modified four of the terms construed by Judge Hubel

(Construction Order 2).


## STANDARDS

Fed. R. Civ. P. 56©) authorizes summary judgment if no

genuine issue exists regarding any material fact and the moving

party is entitled to judgment as a matter of law.  The moving

party must show the absence of an issue of material fact.  *Leisek*

*v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In

response to a properly supported motion for summary judgment, the

nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. West Fin.,* 381 F.3d 948 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of

a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).


## INFRINGEMENT MOTIONS

**I.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (#371) RE INFRINGEMENT OF THE '042 PATENT (CLAIMS 16, 21, 22, 24), and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#391) RE NON-INFRINGEMENT OF THE '042 PATENT (CLAIMS 16, 21, 22, 24)**

In this Section of the Court's analysis of the Infringement Motions, the Court considers all of the Claims limitations raised in Plaintiff's Motion for Partial Summary Judgment and the Claim limitation pertaining to "relieving the administrative burden of processing forms and payments" that is at issue in the Motions of both   Plaintiff and Defendant.   The remaining Claims limitations in the '042 and the '278 Patents that are raised in Defendant's Motion are addressed in Section II of the Court's analysis.

**A.   Relief Sought.**

Plaintiff seeks summary judgment that Defendant's XAP System literally infringes the following Claims of the '042 Patent: independent Claim 16 of the '042 Patent; Claims 21 and 22, which are dependent on Claim 16; and Claim 24, which is dependent on Claims 16, 21, and 22.  Defendant, however, asserts Plaintiff is not entitled to summary judgment as to these Claims.  In addition, Defendant affirmatively seeks summary judgment of

noninfringement as to the same Claims on the ground that there is no genuine issue of material fact that Defendant's XAP System does not meet at least one of the limitations (specifically, relieving the administrative burden of processing forms and payments) described in Claim 16 and on which Claims 21, 22, and 24 depend.  Although Defendant also denies Plaintiff is entitled to summary judgment as to other limitations set forth in Claim 16 and on which Claims 21, 22, and 24 depend, Defendant does not affirmatively seek summary judgment of noninfringement as to those limitations.

**B. Analysis.**

A device or process can infringe a patent literally or under the doctrine of equivalents.  *Amhil Enter., Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1562-63 (Fed. Cir. 1996).  A patent holder has the right to "exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States."  35 U.S.C. § 154(a)(1).  A party infringes the patent if, "without authority," it "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent."  35 U.S.C. § 271(a).

The boundaries of an invention are defined by patent claims contained in a "specification."  35 U.S.C. § 112.  The

specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." *Id.*

Claims may be written in independent or dependent form. *Id.* A dependent claim includes all of the elements of that claim as well as all of the elements of the claim on which it depends. A dependent claim "shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed" and "shall be construed to incorporate by reference all the limitations of the claim to which it refers." *Id.* Ordinarily "if an accused infringer does not infringe an independent claim, it cannot infringe claims that depend on that independent claim." *Streamfeeder, LLC v. Sure-Feed Sys., Inc.,* 175 F.3d 974, 984 (Fed. Cir. 1999)(citation omitted).

Infringement analysis involves two steps: (1) "[T]he court determines the scope and meaning of the patent claims asserted" through claim construction and (2) "the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Tech., Inc.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998)(citations omitted).

Whether literal infringement has occurred is ordinarily a question of fact. *Insituform Tech., Inc. v. Cat Contracting, Inc.,* 161 F.3d 688, 692 (Fed. Cir. 1998), *cert. denied,* 526 U.S. 1018 (1999). Literal infringement of a claim exists "when every

limitation recited in the claim is found in the accused device."
*Enercom GmbH v. Int'l Trade Comm'n,* 151 F.3d 1376, 1385 (Fed.
Cir. 1998), *cert. denied*, 526 U.S. 1130, *reh'g denied,* 527 U.S.
1054 (1999)(citation omitted).

**1.   Claim 16.**

Claim 16 states:

A method of processing over a computer
network forms directed by multiple public
forms users to multiple institutions, the
forms being processed by a third party forms
servicer that is neither one of the multiple
institutions nor one of the public forms
users, the method comprising:

presenting to a form user over a computer
network by a third party forms servicer a
form directed to one of the multiple
institutions, the forms including fields for
the forms user to enter user information;
receiving by the third party forms servicer
over the computer network user information
and electronic payment information entered by
the user;

processing by the third party forms user an
electronic payment associated with form, the
processed payment being from the user to the
one of the multiple institutions to which the
form is directed;

providing by the third party forms servicer
the user information to the institution to
which the form is directed in a format
specified by the institution, the third party
forms servicer thereby providing to public
form user customized forms identified with
institution of higher education and providing
to the institutions custom-formatted data,
while relieving the institution of the burden
of processing forms and payments.

Pl.'s Fourth Amended Compl., Ex. B at col. 36.

As noted, Plaintiff asserts it is entitled to summary judgment of infringement as to the following four limitations in Claim 16 of Patent '042 while Defendant affirmatively seeks summary judgment only as to the fourth listed limitation pertaining to relief from the administrative burden of processing forms and payments:

> **a.   Presenting to a form user over a computer network by a third party forms servicer a form.**

Defendant contends its XAP System does not "present" a form to a user within the meaning of Claim 16. Defendant relies on a dictionary definition of the word "present" from *The New Shorter Oxford English Dictionary* 2393 (4th ed. 1993) and asserts, in the context of this limitation, "present" means to "show, exhibit, or display" a form to someone.  Thus, Defendant argues it "presents" a form to a "form user" only if Defendant displays the form to the user, but not if "some other entity" such as a web browser displays the form.  Because a web browser does the "presenting" in conjunction with Defendant's XAP System, Defendant contends its System does not meet the "presenting" limitation of Claim 16.

According to Plaintiff, however, the term "presenting" is nontechnical "and simply means getting a form to a user over a computer network (like the internet). . . . When the form is transmitted to the user's web browser, it

11 - OPINION AND ORDER

is presented or provided to the user." In support of this construction, Plaintiff emphasizes the preferred embodiment identified in the '042 Patent "communicates with applicants and institutions over the World Wide Web," and "entry page 36 as well as all other pages presented to the applicant, is presented as an HTML page."

Pl.'s Fourth Amended Compl., Ex. B at 2-4. "[I]t is axiomatic that a claim construction that excludes a preferred embodiment . . . 'is rarely, if ever correct and would require highly persuasive evidentiary support.'" *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1308 (Fed. Cir. 2003)(citation omitted).

        The Court notes Defendant's selected definition omits other, more common definitions of the term "presenting" such as "to offer or convey by way of message." *See Webster's Third New Int'l Dictionary* 1793 (1981). In addition, Defendant's narrow construction of the term "presenting" is contrary to the preferred embodiment. Although the Court was not asked to construe the term "presenting" in the course of the *Markman* hearings, the Court agrees with Plaintiff that, consistent with the preferred embodiment described in the '042 Patent, the limitation in Claim 16 as to "presenting" a form means to provide the form to a form user via the form user's web browser.

        On this record, the Court concludes no genuine

12 - OPINION AND ORDER

issue of material fact exists that Defendant's XAP System meets this limitation.  Accordingly, the Court grants Plaintiff's Motion for Summary Judgment (#371) as to this limitation of Claim 16.

> **b.    Processing . . . an electronic payment . . . from the user "to the one of the multiple institutions" to which the form is directed.**

Plaintiff asserts Defendant's XAP System meets this limitation because the XAP System processes a payment to an institution.  Defendant, however, contends the phrase "to the one of the multiple institutions" in this limitation necessarily requires the direction of any form to multiple institutions. Because Defendant's XAP System does not direct forms to multiple institutions, Defendant argues the XAP System does not meet this limitation.

The Court agrees with Plaintiff that Defendant misinterprets this phrase and that the words "to the one of" unambiguously describe a system by which a form associated with an electronic payment is sent to one of multiple institutions. Contrary to Defendant's position, this limitation does not require a system that allows a form to go to multiple institutions.

On this record, the Court concludes no genuine issue of material fact exists that Defendant's XAP System meets this limitation.  Accordingly, the Court grants Plaintiff's

13 - OPINION AND ORDER

Motion for Summary Judgment (#371) as to this limitation of
Claim 16.

      **c.   Providing by the third party forms servicer the
user information to the institution to which the
form is directed in a format specified by the
institution.**

In the *Markman* hearings, Defendant urged the Court
to construe the word "providing" to mean "making the generated
form available to the user."  The Court rejected that
construction and agreed with Plaintiff that the term "is an
everyday word[] used in [its] ordinary, everyday sense and, thus,
[it] need[s] no construction."  Construction Order 1 at 31.
Nevertheless, Defendant again urges the Court to define the word
"providing" to mean "make available" in this instance.  Using
that definition, Defendant contends the XAP System does not meet
this limitation because it only "makes available" the user
information in a flat-file format rather than "in a format
specified by the institution."  In particular, Defendant argues
that uploading the applicant information to a student-information
system requires colleges to convert the flat-file format provided
by the XAP System into a relational database format or a
proprietary database format for use in the colleges' student-
information systems.  Defendant points to the expert opinion of
Justin Tygar, Ph.D., to support Defendant's proposition that the
XAP System does not provide information in a format specified by

14 - OPINION AND ORDER

the institution.

Plaintiff, however, asserts it is entitled to
summary judgment that the XAP System meets this limitation
because the information the XAP System provides can be uploaded
into a particular school's information system in a format
selected by the school.  Indeed, some of Defendant's own
witnesses acknowledge the XAP System permits an institution to
use Defendant's "Export Wizard" to choose a format that will
allow it to upload information into its particular system.
Def.'s Mem. in Supp. of Mot. for Summ. J., Shimanovsky Decl.
¶ 4 (Export Wizard "is a point-and-click online tool, to be used
by an authorized representative of a school or university in
building a layout . . . [that] can be downloaded to the college's
computer."); Pl.'s Reply, Monkress Decl., Ex. 4; Wagoner Dep. at
168 (a school can use Export Wizard to choose a format that will
allow it to upload information).

This Court has construed the term "in a format
specified by the institution" to mean "[t]he institution chooses
from a third party one or more data formats that allow the
institution to use the data without having to convert it."
Construction Order 2.  In his expert report, Dr. Tygar states
"[t]he institution must access XAP's Control Center to create
projects for retrieving the applicant data through Export
Wizard."  Pl.'s Mem. in Supp. of Mot. for Summ. J., Monkress

15 - OPINION AND ORDER

Decl., Ex. 4; Tygar Expert Report at 63.  Contrary to Defendant's arguments, the Court concludes Dr. Tygar's statement is, in fact, consistent with the Court's construction in that the institution accesses the XAP System's Export Wizard to choose a format suitable for uploading information without having to convert it and thereby specifies the format.

On this record, the Court concludes no genuine issue of material fact exists that Defendant's XAP System meets this limitation.  Accordingly, the Court grants Plaintiff's Motion for Summary Judgment (#371) as to this limitation of Claim 16.

> **d. Relieving the institution of the admin-istrative burden of processing forms and payments.**

Judge Hubel construed the term "relieving" to mean the "elimination of anything the institution <u>must</u> do to use the data."  Construction Order 1 at 74 (emphasis in original).  Thereafter, Plaintiff argued that "relieving the burden" meant merely "to lessen the burden."  This Court, however, rejected that construction and confirmed "relieving" means "[t]he described acts of the third party eliminate the administrative burden to the institution of processing forms and payments."

Nevertheless, even as construed by the Court, Plaintiff asserts it is entitled to summary judgment that Defendant's XAP System meets this limitation because "the

16 - OPINION AND ORDER

institution is not required to do any 'manipulation of data' with respect to the processing of forms or electronic payments." Conversely, Defendant asserts it is entitled to summary judgment of noninfringement as to this same limitation because institutions using its XAP System still encounter certain administrative burdens of processing forms and payments, and, therefore, such burdens are not "eliminated" when using the XAP System.

> ### (1)  Relieving the burden of processing forms.

According to Defendant, the XAP System does not eliminate the "administrative burdens of processing" that are needed to obtain application form data from the XAP Control Center and to upload such data to the institution's information system, including the burden to select a desired download format for the data, configuring the XAP Communicator program, configuring a compatible file format using Export Wizard, and other related tasks for importing the information into the institution's system.  As noted, however, an institution working with the XAP System may access application form data via a simple "point-and-click" step.  In essence, Defendant contends such a step and the program that permits it are "administrative burdens of processing forms" that are not eliminated by the XAP System. At the very least, Defendant argues, a jury question exists as to whether Defendant's XAP System meets this particular limitation.

17 - OPINION AND ORDER

Under the Court's construction, it is the third-party's "described acts" in Claim 16 that must eliminate an institution's "administrative burden" in processing an application form.  All of Defendant's arguments apply to the last of the third-party's "described act[s]" in Claim 16; namely, the acts of "providing . . . the user information to the institution to which the form is directed in a format specified by the institution" and "providing to the institutions custom-formatted data."  The XAP System, via the Export Wizard, acts as a third-party that performs these "described acts."  These acts, in turn, eliminate any burden on the institution to organize the data.  Thus, the Court concludes a "point-and-click" step in this context is not an "administrative burden of processing forms" within the meaning of Claim 16.

Accordingly, the Court concludes Plaintiff has established that Defendant's XAP System meets this limitation as to the processing of forms as a matter of undisputed fact.  The Court, therefore, grants Plaintiff's Motion for Partial Summary Judgment (#371) and denies Defendant's Motion for Summary Judgment (#391) as to this limitation of Claim 16.

### (2) Relieving the burden of processing payments.

According to Defendant, its XAP System does not eliminate an institution's burden of processing payments

because the institution must still decide "[w]hether and how to process payments" by "select[ing] and contract[ing] with a payment entity" and "establish[ing] and maintain[ing] a merchant account for processing payments."  The institution must also handle "chargebacks."  Defendant asserts these are burdens that are not eliminated by the XAP System even if they are burdens incurred "only once"; *e.g.,* setting up a merchant account.

                    In support of its Motion, Plaintiff, however, contends the burdens identified by Defendant (*i.e.,* contracting with a payment entity, setting up accounts, and issuing charge-backs) may be processes "associated with" processing payments, but they are not payment processes themselves.  Plaintiff points out that Judge Hubel rejected a construction of "administrative burden" in which the burden involves "administrative tasks typically associated with the processing of forms such as admissions applications and any payments associated with the forms."  Construction Order 1 at 76.  Plaintiff also notes the XAP System allows the automatic transfer of an individual applicant's payments, which relieves the institution of that burden.  According to Plaintiff, one-time tasks, such as establishing accounts for receipt of payments, are accounting functions undertaken after the payment is received rather than processing burdens.

19 - OPINION AND ORDER

On this record, the Court is satisfied neither party has established it is entitled to summary judgment of infringement or noninfringement as to the administrative burden of processing payments because fact issues remain on this hotly-contested question. Accordingly, the Court denies this aspect of Plaintiff's Motion (#371) and denies those portions of Defendant's Motion (#391) pertinent to this aspect of Claim 16 and its related dependent Claims 18, 19, 20, 22, 24, 25, 28, and 31 that incorporate this specific limitation.

### 2.    Claim 21.

Claim 21 describes "[t]he method of Claim 16 in which presenting a form to a form user over a computer network includes presenting a form including multiple pages." Defendant concedes its XAP System presents a form that includes "multiple pages." Defendant, however, argues Plaintiff is not entitled to summary judgment as to this issue because it did not assert infringement of Claim 21 before January 25, 2006, which is the deadline the Court set for such disclosures. *See* Transcript of Hearing held Dec. 22, 2005, at 17 ("All parties need to have completed their final statement to the opponent of their infringement contentions . . . [by] January 25, 2006.").

As a predicate to establishing infringement of Claims 22 and 24, which are dependent on Claim 21, Plaintiff seeks summary judgment on the conceded fact that the XAP System

20 - OPINION AND ORDER

includes multiple pages.  35 U.S.C. § 112 provides:  "A claim in
dependent form shall be construed to incorporate by reference all
the limitations of the claim to which it refers."  Plaintiff
contends it implicitly incorporated an infringement contention as
to Claim 21 when it timely identified infringement of Claims 22
and 24 because Claims 22 and 24 are dependent on Claim 21.  The
Court agrees.

On this record, the Court concludes there are not any
genuine issues of material fact and Plaintiff has established
Defendant's XAP System meets the limitation in Claim 21.
Accordingly, the Court grants Plaintiff's Motion for Summary
Judgment (#371) as to this limitation of Claim 21.

### 3.   Claim 22.

Plaintiff contends Defendant's XAP System meets each of
the limitations in Claim 22, which describes "[t]he method of
claim 21 further comprising verifying in accordance with
validation criteria user information on each of the multiple
pages after each page is completed."  Pl.'s Fourth Amended
Compl., Ex. B at col. 37.

The Court has not previously construed the specific
term "verifying in accordance with validation criteria" or any
part of that term.  Defendant urges the Court to construe the
term as a whole to mean "using the criteria to check for errors
in an application."  According to Defendant, "validation criteria

21 – OPINION AND ORDER

. . . are the rules used to determine whether errors exist in the application."  Based on that construction, Defendant asserts the XAP System does not meet the limitation in Claim 22 because the XAP System "verifies some but not all of the pages of a multi-page application."  To support its assertion, Defendant relies on Dr. Tygar's statement that "in the XAP System, some pages of XAP's multi-page applications are not verified at all."  Tygar Decl., Ex. 1 at ¶ 42, Ex. 2 at 35.

Plaintiff argues Dr. Tygar's statement is insufficient to create an issue of fact because it is conclusory.  In particular, Plaintiff points out that Dr. Tygar did not support his statement with any examples of nonverification.  In addition, Plaintiff relies on the deposition testimony of Boris Shimanovsky, Defendant's Chief Technology Officer, that an application could not be submitted on the XAP System "if [the applicant] had never successfully completed one of the pages." Shimanovsky also testified an applicant must hit the save button to proceed from one page to the next.  Shimanovsky noted if an applicant fails to fill out a particular page of the application correctly and then hits the save button to proceed to the next page, "the student will not be able to proceed from that page hitting the save button."  Monkress Decl., Shimanovsky Dep. at 115.  Finally, David Maier, Plaintiff's expert who is a professor in the Department of Computer Science at Portland State

22 - OPINION AND ORDER

University, also states verification of user information occurs when each page of a multi-page application is completed.  To illustrate this point, Maier cites examples of university application forms that have "checks" for certain applicant information such as address, name, and telephone number, and he notes "some of these checks verify that a given field value is both present and meets a particular format criterion."  Maier Decl. ¶ 21.

Although the Court agrees Dr. Tygar's opinion is somewhat conclusory and without any explicit support, these criticisms are more relevant to the weight given his analysis rather than to the admissibility of his opinion.  Accordingly, in light of the contradictory expert testimony regarding this Claim limitation, the Court is unable to conclude that Plaintiff has demonstrated the absence of any genuine issues of material fact.

Accordingly, the Court denies summary judgment to Plaintiff that Defendant's XAP System meets the limitation in Claim 22.

### 4.  Claim 24.

Claim 24 describes "[t]he method of claim 22 in which the validation criteria is specified by the institution to which the form is directed."  Pl.'s Fourth Amended Compl., Ex. B at col. 37.  According to Plaintiff, the XAP System "can perform

'data checks' a school asks for," and Defendant considers the
term "data checks" to mean the same thing as "validation."
Thus, Plaintiff contends the institution specifies the validation
criteria when it uses the XAP System to request the data checks
that comprise the validation.

        Defendant, on the other hand, argues its XAP System
does not meet this claim limitation because the XAP System rather
than the institution specifies the validation criteria.  Although
the record reflects institutions have actually specified
validation criteria for certain fields in an application under
the XAP System, Defendant argues the "fact that institutions have
requirements for their applications and communicate those
requirements to [the XAP System] does not compel the conclusion
that the institutions specify the criteria used to ensure the
applications contain information satisfying those requirements."

        On this record, the Court concludes a genuine issue of
material fact exists as to whether the institution or the XAP
System generally specifies the validation criteria.  Accordingly,
even if Plaintiff ultimately establishes Defendant's infringement
as to Claim 22, Plaintiff has not established Defendant's XAP
System meets the limitation in Claim 24.  The Court, therefore,
denies Plaintiff's Motion for Partial Summary Judgment (#371) as
to Claim 24.


24 - OPINION AND ORDER

## C.    Summary

In summary, the Court

1.    **GRANTS** that part of Plaintiff's Motion for Partial Summary Judgment (#371) in which Plaintiff asserts Defendant's XAP System literally infringes the following limitations of Claim 16:

a.    Presenting to a form user over a computer network by a third party forms servicer a form,

b.    processing . . . an electronic payment . . . from the user "to the one of the multiple institutions" to which the form is directed,

c. providing by the third party forms servicer the user information to the institution to which the form is directed in a format specified by the institution, and

d.    relieving the institution of the administrative burden of processing forms only;

2.    **GRANTS** that part of Plaintiff's Motion for Partial Summary Judgment (#371) in which Plaintiff asserts Defendant's XAP System literally infringes the limitations of Claim 21;

3.    **DENIES** the balance of Plaintiff's Motion (#371); and

4.    **DENIES** Defendant's Motion (#391) as to the limitations of Claim 16 that pertain to relieving the institution of the administrative burden of processing forms and payments as well as

the related dependent Claims 18, 19, 20, 22, 24, 25, 28, and 31 that incorporate this specific limitation.

## II. REMAINDER OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#391) RE NONINFRINGEMENT OF THE '278 PATENT (CLAIMS 1, 21) and '042 PATENT (CLAIMS 1, 38).

### A.   Relief Sought.

In addition to its argument of noninfringement as to Claim 16 of the '042 Patent, Defendant also seeks summary judgment that its XAP System does not infringe the '278 Patent or the '042 Patent because the XAP System:

1.   does not meet the "record" limitations in Claims 1 and 21 of the '278 Patent,

2.   does not practice the "order of method" steps in Claim 1 of the '278 Patent and Claim 1 of the '042 Patent,

3.   does not have the architecture set forth in Claim 21 of the '278 Patent, and

4.   does not include all of the elements of Claims 1 and 38 of the '042 Patent and Claim 1 of the '278 Patent.

### B.   Analysis.

### 1.   Record Limitations.

Claims 1 and 21 of the '278 Patent state in relevant part:

> 1.   A method of creating and processing over a computer network forms representing applications to different

26 - OPINION AND ORDER

higher education institutions, comprising:

* * *

storing the posted applicant information in a
database field structure defined by multiple
database fields, the database including multiple
records, *each record capable of storing
information corresponding to each of the database
fields*;

* * *

21. A system for creating and
processing customized forms for
unrelated institutions using a common
third-party data storage over a computer
network, the system including:

* * *

second data storage in communication with the
server computer and including user information
posted from the client computer, the second data
storage including a database having a database
field structure defined by multiple database
fields, the database including multiple records,
each record capable of storing information
corresponding to each of the database fields; and

* * *

the forms engine program automatically
populating the fields for user
information with user information
available from the second data storage,
accepting user information entered on
the form by the user, and storing the
newly entered information in the second
data storage for automatically
populating subsequent forms, the user
information entered by the user
including at least some of the
information not entered on the previous
form by the user, the forms engine
automatically storing the entered

> information into the database by adding new
> records to the database . . . .

Pl.'s Fourth Am. Compl., Ex. A at col. 24-25 (emphasis added).

At issue is the construction of the terms "record," "multiple

records," and "each record capable of storing information

corresponding to each of the database fields."

### a.    "Record" and "Multiple Records."

Judge Hubel construed "record" to mean "a

Collection of related data items stored in named data fields" and

"multiple records" to mean "multiple Collections of related data

items stored in named data fields."  Judge Hubel explained:

> In the preferred embodiment, this
> construction includes the understanding that
> one record is one row.  In other embodiments,
> however, the restriction of record to one row
> may not be workable.  For example, with XML,
> there is no traditional "row."

Construction Order 1 at 55.  In reaching this construction, Judge

Hubel rejected Plaintiff's argument that "record" can comprise

"multiple rows of information."  Construction Order 1 at 51.

Although Judge Hubel acknowledged the "preferred embodiment"

should be understood as a single row in the table subject to the

caveat that it might not work in other embodiments, he

specifically rejected Defendant's proposed construction of

"multiple records" as "rows of a single relation."  Construction

Order 1 at 54.  This Court adopted Judge Hubel's construction.

Although Plaintiff concedes Defendant's XAP System stores an applicant's information in multiple rows in multiple databases, Plaintiff, nevertheless, asserts the Court's construction only requires a "record" to be "(1) a Collection of related data items, which are (2) stored in named data fields." According to Plaintiff, "[t]his definition does not preclude a 'record' from being a single row if it meets these two criteria, but the definition does not require a 'record' to be a single row either."

After a thorough review of the parties' arguments and submissions, the Court concludes a genuine issue of material fact exists as to whether the XAP System lacks the capability to store all of an applicant's "records" in a single row of a database.  Accordingly, the Court denies Defendant's Motion for Summary Judgment (#391) of Noninfringement as to this limitation.

**b.    Record Capable of Being Stored in a Database Field.**

Judge Hubel construed the term "database field" to mean "the space reserved in a database for storage of a particular type of data."  Construction Order 1 at 46.  Defendant has presented evidence that the XAP System does not reserve space for all of the data to be stored.

Defendant previously requested Judge Hubel and this Court to construe this limitation to mean "each record

capable of storing information corresponding to each of the database fields."  If so construed, "every record has space reserved for storage for all of the application information fields stored in the database."  This Court, like Judge Hubel, rejected Defendant's construction and indicated the issue should "be developed on summary judgment."

Nonetheless, and despite the parties' considerable briefing of this issue, the Court still is unable to conclude that Defendant has met its burden to show it is entitled to a judgment of noninfringement as to this limitation.

Accordingly, the Court denies Defendant's Motion for Summary Judgment (#391) of Noninfringement as to the "record limitations" of Claims 1 and 21 of the '278 Patent.  The Court anticipates this issue will be the subject of additional pretrial consideration at the Pretrial Conference.

### 2.    Order-of-Method Steps.

Defendant contends it is entitled to summary judgment of noninfringement because the XAP System does not practice the order-of-method steps of Claim 1 of the '278 Patent or Claim 1 of the '042 Patent within the meaning of the Court's claim construction.

### a.    Claim 1 of the '278 Patent.

As Judge Hubel observed, Claim 1 discloses the

30 - OPINION AND ORDER

following steps:

> (1) creating a first application form to a first institution in response to a request from an applicant, the form customized to the preferences of the first institution and including first form data fields for entering applicant information;

> (2) presenting the first application to the applicant over a computer network;

> (3) entering applicant information in the first form data fields;

> (4) posting the applicant information entered in the first form data fields to a server;

> (5) storing the posted applicant information in a database (with more info about the database disclosed);

> (6) creating a second application form to a second institution in response to a request from "the" applicant (as opposed to "a" applicant disclosed in the first step addressing the first application form), the form customized to the preferences of the first institution and including second form data fields for entering applicant information, at least one which corresponds to applicant information not entered into the first form data fields;

> (7) automatically inserting into some of the second form data fields applicant information from the database;

> (8) providing the second application form to the applicant over a computer network;

> (9) entering applicant information into the second form data fields into which information was not inserted from the data storage or into which the data inserted from the data storage is to be changed;

>    (10) posting the applicant information
>    entered into the second form data fields to
>    the server; and
>
>    (11) automatically storing the applicant
>    information entered into the second form data
>    fields into the database.

Construction Order 1 at 81-82.  Judge Hubel recommended this
Court conclude the method steps set forth in Claim 1 of the '278
Patent must be performed "as a matter of logic" in the same order
as listed.  Construction Order 1 at 81-82.  This Court adopted
Judge Hubel's recommendation.  Construction Order 2.

          The issues here are (1) whether the word
"performed" means merely "commenced" or "completed," (2) whether
all of the steps must be performed by the user/applicant or are
performed in some instances by the XAP System, and, if so, (3)
whether it makes a difference to the order in which the steps are
performed.

          Plaintiff contends it is undisputed that if the
term "performed" means "commenced," the XAP System commences all
of the steps in the order described in Claim 1.  In addition,
Plaintiff asserts if the term "performed" means "completed" as
argued by Defendant, the steps are completed in order even if all
or only some of the steps are performed by the XAP System.

          Defendant, however, asserts the applicant/user
rather than the XAP System enters the information described in

Step 3.  If the "user logged in to the XAP System is the person who would perform this step," Defendant argues the steps are not performed in order by the XAP System.  In addition, if the XAP System automatically enters information, Defendant also argues it would do so before the application is provided to the applicant, which is not in the order described in Claim 1.

Ultimately, the issue is whether the order of steps described in Claim 1 is disrupted if both of the two potential actors (the XAP System and the applicant/user) have the ability to perform some or all of the steps.  Unsurprisingly, the parties' opinions diverge on this issue.  Plaintiff argues Claim 1 "permits" but does not "require" multiple actors, and, in any event, the steps are performed in order regardless who is performing them.  Defendant, however, contends the XAP System requires the applicant to perform Step 3 and, by doing so, departs from the order of steps set out in Claim 1.

There is obvious logic to Plaintiff's argument, which, at the least, creates an issue of fact as to whether the order of steps set out in Claim 1 of the '278 Patent is disrupted depending on which entity is performing the step.  The Court, therefore, denies Defendant's Motion for Summary Judgment (#391) to this extent.

### b.    Claim 1 of the '042 Patent.

As Judge Hubel observed, Claim 1 of the '042

Patent discloses the following steps:

> (1) presenting to a form user over a computer network by a third-party forms servicer in response to a request by the form user, a form directed to one of multiple institutions of higher educa-tion, the form being generated by a forms generator that generates multiple customized forms;

> (2) entering user information onto the form;

> (3) entering payment information;

> (4) the third-party forms servicer receiving user information and electronic payment information entered by the user;

> (5) processing of an electronic payment by the third-party forms servicer;

> (6) processing the user information by the third-party forms service.

Construction Order 1 at 85-86. This Court adopted Judge Hubel's recommendation that the Court conclude the steps could be performed in this sequence except that Step 3 could be performed before or after Step 2 and Steps 5 and 6 could precede each other as long as they follow Step 4.

The parties present virtually the same arguments here as they did regarding Claim 1 of the '278 Patent. If some information is entered automatically by the XAP System, Defendant contends such an event "necessarily would happen before the form was provided to the user," and, therefore, this step would be out

34 - OPINION AND ORDER

of order.   On the other hand, Plaintiff asserts the XAP System enters the information in the order described.   The dispute remains, however, as to the effect on the order of steps if some information is provided by the XAP System and some by the user/applicant.

For the reasons given as to Claim 1 of the '278 Patent, the Court concludes genuine issues of material fact exist as to whether the XAP System performs the steps described in Claim 1 of the '042 Patent in the order identified by Judge Hubel.   Thus, the Court denies Defendant's Motion for Summary Judgment (#391) to this extent.

### 3.   Architectural Limitations.

Defendant asserts Claim 21 of the '278 Patent requires the following configuration of components with a specified "server computer":

> A system for creating and processing customized forms for unrelated institutions using a common third-party data storage over a computer network, the system including:
>
> a server computer operated by the third-party and in data communication over a data network with a client computer for requesting a form and for entering information onto the form;
>
> first data storage in communication with the server computer and including form description information specifying the content and appearance of each customized form;

>           second data storage in communication with the
>           server computer and including user
>           information posted from the client computer.

Pl.'s Fourth Amended Compl., Ex. B at col. 37.  Defendant

contends the limitation pertaining to a "server computer"

describes a single, specific piece of hardware, and, therefore,

the XAP System does not infringe because its server computer is

made up of an amalgam of pieces.  To support its contention,

Defendant relies on a definition of "server" as a "single device

or computer" as set out in *IEEE Standard Dictionary of Electrical

and Electronic Terms* 972-73 (6th ed. 1996):  "In a network, a

device or computer system that is dedicated to providing specific

facilities to other devices attached to the computer network."

        On the other hand, Plaintiff argues under the Doctrine

of Equivalents that the limitation encompasses a system that may

consist of either one piece of hardware or an amalgam of

different pieces.  In support of its contention, Plaintiff relies

on the analysis of Dr. Maier, who explains different devices in

the XAP System operate together to perform in a way substantially

similar to the literal language of Claim 21.  Maier Decl. ¶¶ 30-

31.

        Although the Court has not construed the term "server

computer," there are unresolved issues of fact under either

party's construction.  On this record, therefore, the Court

denies Defendant's Motion for Summary Judgment (#391) to this

36 - OPINION AND ORDER

extent.

####     4.    Role of "Multiple Actors" in Claims 1 and 38 of the '042 Patent and Claim 1 of the '278 Patent.

Defendant asserts each of Claims 1 and 38 of the '042 Patent and Claim 1 of the '278 Patent require that multiple actors join to infringe.  Defendant, therefore, argues it could not infringe any of these Claims because it acts alone. Defendant, thus, seeks summary judgment of noninfringement to this extent.

Each of these three Claims describes a process involving three actors:  namely, a public forms user (user/applicant), a third-party server, and an institution. Claim 1 of the '042 Patent describes:

> a method of processing over a computer
> network forms [including electronic payments]
> directed by multiple public forms users to
> multiple institutions, the forms being
> processed by a third-party that is neither
> one of the multiple institutions nor one of
> the public forms users . . . .

Pl.'s Fourth Amended Compl., Ex. B at col 36.  Claim 38 of the '042 Patent describes:

> A method of processing over a computer
> network forms directed by multiple public
> forms users to institutions, the forms
>
> process being administered by a third-party
> forms servicer that is neither one of the
> institutions nor one of the public forms
> users, the method comprising:
>
> *receiving by an institution* from a third-

37 - OPINION AND ORDER

party forms servicer user information in a
format specified by the institution, the user
information being derived from a form
customized for the institution and identified
primarily with the institution rather than
with the third part[y] forms servicer, the
customized form being presented to a form
user over a computer network by the third-
party forms servicer, the customized form
including fields for data to be inserted
manually by the forms user or automatically,
*[t]he information in the completed form being
posted to the third-party forms servicer*; and

*receiving from the form user via the third-
party form servicer* an electronic payment
associated with the customized form;

thereby providing to the form user a
customized form identified with the
institution and providing the institution
with custom-formatted data and an electronic

payment, while relieving the institution of
the administrative burden of processing forms
and payments.

Pl.'s Fourth Amended Compl., Ex. B at Col. 38 (emphasis added).

Claim 1 of the '278 Patent describes the same method as

Claim 1 of the '042 Patent for processing applications to

institutions.

According to Plaintiff, neither Claim 1 of the '042

Patent nor Claim 1 of the '278 Patent requires multiple actors,

and, therefore, Defendant is not entitled to a judgment of

noninfringement.  In addition, even if these Claims required

multiple actors, Plaintiff asserts Defendant's XAP System still

infringes based on a "joint infringement" theory in which "two

entities combine to perform the steps of a claim."  Finally,

Plaintiff argues Defendant belatedly is attempting to construe
Claim 38 of the '042 Patent to require multiple actors even
though the limitations in Claim 38 can be performed by the
institution, a single actor.

Plaintiff argues the first step in these Claims
requires the institution to receive information, the second step
(receipt of payment) "can be performed by the institution," and
the third step "does not prohibit" an instruction from "the forms
servicer's computer to process data and send the data to the
institution."  In addition, the third step "does not prohibit an
institution from providing an electronic payment to itself, by
instructing [the XAP System] to forward payments to a financial
entity of the institution's choice."  In any event, as noted,
Plaintiff also argues Defendant is liable on a theory of "joint
infringement."

In *On Demand Machine Corp. v. Ingram Industries, Inc.,*
the court affirmed the following jury instruction regarding
"joint infringement":

> It is not necessary for the acts that
> constitute infringement to be performed by
> one person or entity.  When infringement
> results from the participation and combined
> action(s) of more than one person or entity,
> they are all joint infringers and jointly
> liable for patent infringement.  Infringement
> of a patented process or method cannot be

39 – OPINION AND ORDER

> avoided by having another perform one step of
> the process or method.  Where the infringe-
> ment is the result of the participation and
> combined action(s) of one or more persons or
> entities, they are joint infringers and are
> jointly liable for the infringement. . . .

442 F.3d 1331, 1344-45 (Fed. Cir. 2006).  Plaintiff contends the

XAP System

> invites users to enter their user and payment
> information by presenting them with screens
> for that purpose.  [The XAP System] then
> completes the process after receiving the
> information it has asked the user to provide.

Pl.'s Mem. in Supp. of Resp. to Def.'s Mot. for Summ. J.

at 28.  In essence, Plaintiff argues Defendant cannot avoid

liability by enabling another to perform one or more of the

necessary infringing steps.

Defendant counters that joint infringement applies only

when there is an agency or contractual relationship between the

parties or concerted action by third parties.  *See, e.g., E.I.*

*DuPont De Nemours & Co. v. Monsanto Co.,* 903 F. Supp. 680, 735

(D. Del. 1995), *aff'd,* 92 F.3d 1208 (Fed. Cir. 1996).  *But see*

*Shields v. Halliburton Co.*, 493 F. Supp. 1376, 1389 (W.D. La.

1980), *aff'd*, 667 F.2d 1232 (5th Cir. 1982) ("Infringement of a

patented process or method cannot be avoided by having another

perform one step of the process or method.")*.  See also Crowell*

*v. Baker Oil Tools*, 143 F.2d 1003, 1004 (9th Cir. 1944), *cert*.

*denied*, 323 U.S. 760 (1944)("It is obvious that one may infringe

40 - OPINION AND ORDER

a patent if he employs an agent for that purpose or has the
offending articles manufactured for him by an independent
contractor."); *Metal Film Co. v. Metlon Corp.*, 316 F. Supp. 96,
110 n.12 (S.D.N.Y. 1970)("That defendants choose to have the
vacuum metallizing, which was a conventional step . . . done by
outside suppliers does not mitigate their infringement of the
overall process.").

On this record, the Court concludes a genuine issue of
material fact exists as to whether multiple actors must be used
in order to meet the limitations in Claims 1 and 38 of the '042
Patent and Claim 1 of the '278 Patent.  Accordingly, the Court
does not reach Defendant's alternative argument that Defendant is
entitled to summary judgment as to these claims if multiple
actors are required.  Accordingly, the Court, therefore, denies
Defendant's Motion for Summary Judgment (#391) of Noninfringement
to this extent.

**C.    Summary**

In summary, the Court:  **DENIES** Defendant's Motion for
Summary Judgment (#391) of Noninfringement as to:

1.  the record limitations of Claims 1 and 21 of the
'278 Patent,

2.  the order-of-method steps limitations of Claim
1 of the '042 Patent and Claim 1 of the '278 Patent,

41 - OPINION AND ORDER

3.  the architectural limitations of Claim 21 of the '278 patent, and

4.  the alleged multiple-actor limitations in Claims 1 and 38 of the '042 Patent and Claim 1 of the '278 Patent.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#386) AS TO INVALIDITY OF CERTAIN CLAIMS

**I.  Invalidity of the '042 Patent:  Anticipation by Prior Art.**

**A.  Relief Sought.**

Defendant moves for summary judgment that Claims 16 and 18 of the '042 Patent are invalid because earlier college-application systems offered for sale by The Princeton Review's CollegeEdge System and Defendant's Legacy System anticipated these Claims.

**B.  Analysis.**

An invention claimed in a patent is anticipated if "the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).  Two conditions must be satisfied to establish an on-sale bar: "First, the product must be the subject of a commercial offer for sale. . . .  Second, the invention must be ready for patenting."  *Pfaff v. Wells Elec., Inc.,* 525 U.S. 55, 67 (1998).  A commercial

sale is "a contract between parties to give and pass rights of
property for consideration which the buyer pays or promises to
pay the seller for the thing bought or sold." *Zacharin v. U.S.*,
213 F.3d 1366, 1370 (Fed. Cir. 2000).  A product is "ready for
patenting" if it is reduced to practice before the critical date
or if "the inventor ha[s] prepared drawings or other descriptions
of the invention that [are] sufficiently specific to enable a
person skilled in the art to practice the invention." *Pfaff,* 525
U.S. at 67-68.

A determination that a patent is invalid as "anticipated"
under 35 U.S.C. § 102 requires the court to find "each and every
limitation . . . expressly or inherently in a single prior art
reference." *Celeritas Tech. Inc. v. Rockwell Int'l Corp.*, 150
F.3d 1354, 1360 (Fed. Cir. 1998).  Whether prior art anticipated
an invention is a question of fact.  *Apple Computer, Inc. v.
Articulate Sys., Inc.*, 234 F.3d 14, 20 (Fed. Cir. 2000).  Because
a patent issued by the Patent Office is presumed to be valid
pursuant to 35 U.S.C. § 282, the evidentiary burden is a showing
of clear and convincing evidence of facts to support a conclusion
of invalidity.  *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d
1339, 1355 (Fed. Cir. 1999).

**1.  The CollegeEdge System.**

An October 1996 press announcement released by SNAP

Technologies, the company that developed the CollegeEdge System, stated:

> [SNAP], a software and World Wide Web company . . . and a charter group of Boston area Colleges including Massachusetts Institute of Technology, Boston University, Boston College, Tufts University, Brandeis University and Babson College today announced the CollegeEdge Web Application System, which will allow students to apply for Colleges using just a web browser.
>
> *    *    *
>
> The CollegeEdge Web Application System gives all students a fast, easy and more effective way to apply for admission to top Colleges and universities. . . .  The system provides step by step guidance throughout the entire process.
>
> Applicants gain access to College applications instantaneously with a single mouse click after setting up a private user account.  The user's personal information is automatically entered into each new application form, leaving the students to complete only the questions that are specific to each College.
>
> After a student has completed their application(s)(*sic*), CollegeEdge double-checks their information on-line using the application Auditor which validates data to make sure it is complete and accurate.  Then they can submit applications to Colleges electronically - without wasting paper, postage, or time.

Rassam Decl., Ex. 2; Shin Dep., Ex. 4.

Plaintiff contends the CollegeEdge System was not in public use before the "critical date" of June 4, 1997; *i.e.,* more than one year before Plaintiff applied for its '042

44 - OPINION AND ORDER

Patent.  According to Plaintiff, the CollegeEdge System, in any event, did not anticipate Plaintiff's '042 Patent because it did not meet every limitation in Claims 16 and 18 of the '042 Patent before the critical date.  Defendant disagrees.  To establish invalidity based on anticipation of the CollegeEdge System, Defendant must show the CollegeEdge System was offered for sale, was ready for patenting, and met the limitations of Claims 16 and 18 before the critical date.

### a.  Offer for Sale.

Plaintiff contends the record does not contain any evidence of an offer of sale of the CollegeEdge System before the June 4, 1997, critical date.

Defendant points to various exhibits used in the deposition of Jung Shin, formerly the President of SNAP Technologies, including SNAP's press announcement that the system was "launched" in December 1996 with "seven paying customers, MIT, Boston University, Brandeis Babson, Tufts, and Wellesley." In addition, Defendant cites Shin's testimony that SNAP made a presentation of the CollegeEdge System to UCLA in May 1997. Shin testified SNAP followed up the presentation to UCLA with an email further promoting the CollegeEdge System:  "If UCLA is willing to commit to doing the system, then we can work out a payment schedule that works for UCLA."

45 - OPINION AND ORDER

Although Defendant's evidence may support an inference that the CollegeEdge System was offered for sale before the critical date, it does not establish that fact conclusively when the evidence is viewed in the light most favorable to Plaintiff, the nonmoving party. The Court, therefore, concludes a genuine issue of material fact exists as to whether the CollegeEdge System was offered for sale to universities more than one year before Plaintiff applied for the '042 Patent.

**b.   Ready for Patenting.**

Even if the CollegeEdge System was offered for sale before the critical date, Defendant also must establish the CollegeEdge System was ready for patenting as prior art that met each limitation in Claims 16 and 18.

According to Plaintiff, the CollegeEdge System was not ready for patenting with all of the limitations in Claim 16 because it did not (1) process payments electronically, (2) provide a customized form in a format specified by the user, or (3) relieve the administrative burden of processing forms and payments.

**(1) Processing payments electronically.**

Plaintiff asserts the evidence is at best "uncertain" as to whether the CollegeEdge System was able to process payments electronically before the critical date

because the Application Form to be submitted to institutions required students to mail payments by check rather than to pay electronically by credit card.    A printout of a CollegeEdge screen reflecting payment by credit card states in bold letters: "**This Screen is NOT live.**"    Tran Decl., Ex. 10.    Shin testified he believed SNAP put a live screen into production, but he did not remember either the date or what the screen looked like. Shin also testified between December 1996 and June 1997 the CollegeEdge System "offered the option for students to submit credit card information, and the other option was a student could print what we called a signature page and mail a check in separately to the school directly."

Although Defendant does not dispute CollegeEdge's electronic-payment processing system was not in public use, Defendant asserts the CollegeEdge System was offered for sale and was ready for patenting before the critical date because the invention had been disclosed by then.  *See Robotic Vision Sys., Inc. v. View Eng'g, Inc.,* 249 F.3d 1307, 1311 (Fed. Cir. 2001)("[W]hether . . . the software needed to implement the claimed method existed at the time of the disclosure is irrelevant, provided that the disclosure of the invention was made prior to the critical date and was sufficiently specific to enable a person skilled in the art to practice the

47 - OPINION AND ORDER

invention."). Defendant points out SNAP's January 1997 business plan and a contemporaneous email from SNAP to "SCT -Frank Tait" reflect CollegeEdge allows students to "pay electronically." Nevertheless, Plaintiff notes a contemporaneous SNAP business plan identified three options for the CollegeEdge System: low cost, medium cost, and high-end. According to Shin, SNAP "envisioned continuing to build out features and functions to manage the entire admissions process for the schools," but those features had not "yet been implemented."

On this record, the Court concludes a genuine issue of material fact exists as to whether the CollegeEdge System was capable of processing electronic credit-card payments to the same extent as described in Claim 16 of the '042 Patent.

**(2) Providing a customized form in a format specified by the user.**

Defendant presents evidence that CollegeEdge's Application Form was customized for different schools. Exhibit 20 to Shin's deposition reflects an Application Form to MIT customized with information fields specific to MIT. Exhibit 20 includes a printout that reflects users of the form submitted applications to MIT in 1996 before the critical date. Plaintiff asserts the customized Application Form "does not show a computer screen that an applicant would see" without any further explanation.

48 - OPINION AND ORDER

On this record, the Court concludes Plaintiff has failed to establish any genuine issue of material fact exists as to whether the CollegeEdge System was capable of or actually did provide a customized Application Form to users.

Plaintiff also asserts, however, the record does not contain any evidence that the Application Form was in a format specified by the institution.  In response, Defendant notes the CollegeEdge System "offered to send data to schools specified by the school before the critical date, including formats that would not require further conversion."  Defendant points out that Shin testified "if the school wants the file to be laid out as first name, last name, address, versus another school that might want last name, first name, GPA, we would provide that data in that - in the format and layout they specify."  Rassam Decl., Ex. 2; Shin Dep. at 92-93.  Plaintiff counters with other testimony by Shin that the "download capability" may have been in a "comma delimited flat file format" in the first year the CollegeEdge System was offered for sale.  Tran Decl., Ex. 1; Shin Dep. at 23, 70.  Plaintiff argues such a format indicates the CollegeEdge System rather than the institution selected the format.

On this record, the Court concludes a genuine issue of material fact exists as to whether the CollegeEdge

System was ready for patenting to this extent.

### (3) Relieving the administrative burden of processing forms and payments.

If the Court determines the XAP System meets this limitation in Claim 16, Defendant asserts the CollegeEdge System also meets this limitation because the two systems are the same as to this limitation.

The Court has previously determined a genuine issue of material fact exists as to whether the CollegeEdge System was capable of processing electronic credit-card payments to the same extent as described in Claim 16 of the '042 Patent. A genuine issue of material fact exists, therefore, as to whether the CollegeEdge System relieved the administrative burden of processing payments in the manner described in Claim 16 of the '042 Patent.

In summary, the Court concludes on this record that genuine issues of material fact exist as to whether the CollegeEdge System anticipated every limitation in Claims 16 and 18 of the '042 Patent. Accordingly, the Court denies Defendant's Motion for Summary Judgment (#386) that the '042 is invalid to this extent.

### 2. The Legacy System.

Defendant also contends every limitation in Claims 16 and 18 of the '042 Patent is found in Defendant's Legacy System,

which Defendant provided to the California State University System (CSU) before the June 4, 1997, critical date. According to Defendant, the '042 Patent, therefore, is invalid as anticipated by the Legacy System.

Plaintiff, however, contends the Legacy System is not prior art because it was not offered for sale. In addition, Plaintiff asserts the Legacy System was not ready for patenting as prior art because it did not meet the limitations in Claim 16 as to (1) form presentation, (2) payment processing, (3) specified format, (4) custom format, and (5) relieving the administrative burden of processing forms and payments.

### a.    Offer for Sale.

Defendant argues it offered to sell the Legacy System to CSU in May 1996. According to Plaintiff, however, Defendant and CSU merely entered into a contract to develop a system in the future; *i.e.,* "to furnish services for the development and subsequent operation of an electronic university student application and information service." Trans. Dep., Ex. 16. Plaintiff contends an offer to sell a still-to-be-developed online system does not constitute an offer to sell the completed system. Defendant, however, argues it was offering to sell an already-developed process invented by Defendant rather than the apparatus to carry out the method of processing. *See Scaltech, Inc*. *v. Retec/Tetra, LLC*, 269 F.3d 1321, 1331 (Fed. Cir. 2001)

51 - OPINION AND ORDER

(inventor's offer for sale of a processing method may be anticipatory if he has prepared "drawings or descriptions of the invention" that are sufficiently specific to enable a person "skilled in the art to practice the invention.").

The record reflects CSU agreed to purchase an online university application service that was described in documents submitted to CSU by Defendant with its proposal.

On this record, therefore, the Court concludes Defendant has established that it offered the Legacy System for sale to CSU before the critical date.

### b.    Ready for Patenting.

Even if the Legacy System was offered for sale before the critical date, Plaintiff asserts it was not ready for patenting and, therefore, did not meet each and every limitation in Claims 16 and 18 of the '042 Patent.

### (1) Customized forms presentation.

Plaintiff asserts Defendant has failed to establish the Legacy System customized different applications for each campus within CSU. To support this assertion, Plaintiff relies on a statement in Defendant's Request for Proposal to CSU that "[t]he CSU undergraduate application is common to all 22 campuses." Tran Dep., Ex. 8 at 470. In context, however, this statement appears to reflect CSU's then-existing application system rather than the Legacy System.

52 - OPINION AND ORDER

In any event, Defendant maintains its proposal to CSU included the representation that the Legacy System was able to present "a customized version of your application, not a common application or generic application." Osman Dep., Ex. 8 at XAP0196123.

On this record the Court concludes a genuine issue of material fact exists as to whether the Legacy System "present[s] to a form user over a computer network by a third-party forms servicer a form directed to one of the multiple institutions" as described in Claim 16 of the '042 patent.

### (2) Payment processing.

Plaintiff asserts Defendant did not incorporate an electronic-payment capability into the Legacy System before the critical date. It is undisputed that the electronic-payment component of the Legacy System was not in public use before the critical date, but Defendant asserts it was offered for sale before that date.

As noted, the relevant issue is whether the electronic-payment capability of the Legacy System was "ready for patenting" at the time Defendant made the offer to sell it. *See Pfaff*, 525 U.S. at 68. Defendant has presented evidence that CSU's Senior Director for Academic Affairs and Senior Director of Business and Finance advised the Chancellor of CSU in a November 1996 memorandum that Defendant had committed to

53 - OPINION AND ORDER

"have an electronic admission application ready for students seeking admission to the CSU for fall 1997."  The authors wrote this memorandum in the context of "the three year contract awarded to [Defendant] to develop, implement, and operate CSU's electronic application and information service. . . .  The application will be available on the Internet by November 1, 1996."  Rassam Decl., Ex. 8 at 299.

On this record, the Court concludes a genuine issue of material fact exists as to whether Defendant's Legacy System had the payment-processing capability described in the limitation in Claim 16 of the '042 Patent before the critical date.

### (3) Specified format.

Defendant presents evidence that CSU had the ability through the Legacy System "to tell [Defendant] the format in which it wanted the data to be transmitted."  Plaintiff argues Defendant has not presented any evidence as to when the Legacy System had this capability and asserts the Legacy System, at best, had a possible "future capability to 'transfer student data into CSU's Student Information System' and to provide the data in [a particular format]."

On this record, the Court concludes a genuine issue of material fact exists as to whether the Legacy System allowed an institution such as CSU to specify the format by

54 - OPINION AND ORDER

which data could be transmitted for downloading into its student
information system before the critical date of June 4, 1997.

### (4) Custom format.

Plaintiff asserts Defendant has failed to
present any evidence that the Legacy System provided custom-
formatted data to any institutions.  Defendant argues this
limitation requires only that the Legacy System provide "one or
more forms . . . to a user."  Moreover, Defendant asserts the
Legacy System met this limitation by providing to CSU "a
customized" Application Form, the "design" of which was under
CSU's "control."

The record reflects only that the Legacy
System had the ability to transmit an Application Form customized
for one institution, CSU, which included multiple campuses.  This
limited record is insufficient for the Court to determine whether
the Legacy System allowed a customized Application Form to be
submitted to multiple institutions.  The Court, therefore,
concludes a genuine issue of material fact exists as to whether
the Legacy System met the custom-format limitation of Claim 16 of
the '042 Patent.

### 5) Relieving the administrative burden of processing forms and payments.

The Court concludes, as it did with the
CollegeEdge System, that a genuine issue of material fact exists

as to whether the Legacy System had an electronic payment processing capability before the critical date.

C.    **Summary**.

In summary, the Court concludes genuine issues of material fact exist as to whether the CollegeEdge System and/or the Legacy System anticipated Claims 16 and 18 of the '042 Patent more than a year before the critical date.  Accordingly, the Court denies Defendant's Motion for Summary Judgment (#386) that the '042 Patent is invalid because it was anticipated by prior art.

II.  **Invalidity of Patents '042 and '278:  Indefiniteness.**

A.    **Relief Sought**.

Defendant moves for summary judgment that Claims 21, 23, 24, 27, 28, and 31 of the '278 Patent and Claims 15, 31, 32, 33, 34, 35, 36, and 44 of the '042 Patent are invalid for indefiniteness because each of those Claims contains limitations relating to both systems and method elements.

B.    **Analysis**.

Defendant relies on *IPXL Holdings, L.L.C. v. Amazon.com, Inc.,* in which the court found a patent claim was invalid because "it recites both . . . [a] system . . . and the method for using that system."  430 F.3d 1377, 1384 (Fed. Cir. 2005).  Here Defendant contends each of the challenged claims describes the apparatus that is the subject of the patent and the method step that is practiced by the machine and, therefore, falls within the

56 – OPINION AND ORDER

proscription of § 112 as defined in *IPXL*.  Plaintiff, however,
distinguishes *IPXL* on its facts and notes the "method" that was
improperly mixed with the apparatus in *IPXL* was performed by a
human actor.

In *IPXL,* the court found claim 25 was too indefinite because
it did not "apprise a person of ordinary skill in the art of its
scope" and, therefore, was invalid under 35 U.S.C. § 112(2).  *Id.*
at 1384.  The court described the claim and its deficiencies as
follows:

> The system of claim 2 [including an input
> means] wherein the predicted transaction
> information comprises both a transaction type
> and transaction parameters associated with
> that transaction type, and the user uses the
> input means to either change *the predicted
> transaction information or accept the
> displayed transaction type and transaction
> parameters.*
>
> Thus, it is unclear whether infringement of
> claim 25 occurs when one creates a system
> that allows the user to change the predicted
> transaction information or accept the
> displayed transaction, or <u>whether infringe-
> ment occurs when the user actually uses the
> input means to change transaction information
> or uses the input means to accept a displayed
> transaction.</u>

*Id.* (italicized emphasis in original; underlined emphasis added).

Plaintiff argues *IPXL* does not apply in this case because
the court plainly rejected a claim that included both the
description of an apparatus and the description of a method
performed by a person using the apparatus.  Here, on the other

hand, the Claims challenged by Defendant describe the apparatus and include as methods of operation only the functional limitations of those Claims.

A "functional limitation" is "an attempt to define something by what it does, rather than by what it is (*e.g.*, as evidenced by its specific structure or specific ingredients)." *Manual of Patent Examining Procedure* § 2173.05(g)(8th ed., 2001, rev. 2005). The *Manual* further states "there is nothing inherently wrong with defining some part of an invention in functional terms. Function language does not, in and of itself, render a claim improper." *Id.* (citing *In re Swinehart,* 439 F.2d 210, 213 (Fed. Cir. 1971)("[Not] every claim containing 'functional' terminology is broad. Indeed, in many cases it will be obvious that only a very limited group of objects will fall within the intended category.")).

Defendant, on the other hand, cites Claim 21 of the '278 Patent as an example of improper mixing of apparatus and method because it describes "a system for creating and processing customized forms" but then describes a method "automatically populating the fields." In response, Plaintiff points out the *IPXL* court was not concerned about those types of "method" elements being in the same claim. For example, although the court objected to language in the same claim describing both an apparatus (*i.e.,* "a processor") and a method of operation

performed by a person (*i.e.*, "the user uses the input means to .

. . change the predicted transaction"), the court did not object

to language in the same claim describing the same processor as

well as a method whereby "the system predicts transaction

information" (*i.e.,* a functional limitation not

influenced by human activity).

On this record, the Court concludes the challenged Claims

are not indefinite because they include descriptions of the

apparatus and functional limitations associated with the

apparatus as did the claims that passed muster in *IPXL*.

**C.    Summary.**

In summary, the Court

1.    **GRANTS** that part of Defendant's Motion for Summary

Judgment (#386) as to the invalidity of the '042 Patent

to the extent that:

a. the CollegeEdge System provides a customized

Application Form to users as described in Claim 16;

b. the Legacy System was offered for sale before

June 4, 1997;

2.    **DENIES** the balance of Defendant's Motion for Summary

Judgment as to the invalidity of the '042 Patent; and

3.    **DENIES** that part of Defendant's Motion for Summary

Judgment as to the invalidity of multiple Claims in the '042 and

'278 Patents for indefiniteness.

59 – OPINION AND ORDER

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## RE INEQUITABLE CONDUCT DEFENSE (#372)

**I.    Inequitable Conduct.**

Inequitable conduct occurs either when a patent applicant, with intent to deceive, does not disclose material information to the PTO or when an applicant submits false material information. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d at 872.  The benchmark for materiality is the information's relevance to patentability under the legal standards.  *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997).

**II.    Relief Sought.**

Plaintiff seeks summary judgment that it is entitled to prevail against Defendant's affirmative defense that the '278 Patent and the '042 Patent are unenforceable on the ground of inequitable conduct; namely, Plaintiff's alleged failure to disclose prior art in its June 4, 1998, patent application to the Patent Office.  Plaintiff contends it is entitled to a summary judgment because no genuine issues of material fact exist that Plaintiff was candid and acted in good faith in its application to the Patent Office for those Patents.

**III.    Analysis.**

"Applicants for patents have a duty to prosecute patents in the PTO with candor and good faith, including a duty to

60 – OPINION AND ORDER

disclose information known to the applicants to be material to patentability**."** *Purdue Pharma L.P. v. Endo Pharm., Inc.,* 438 F.3d 1123, 1128 (Fed. Cir. 2006).  "A breach of this duty constitutes inequitable conduct," which can arise from an "affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive" or mislead the Patent Trade Office.  *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed. Cir. 1995).

When determining whether any misrepresentations were intentional, "the involved conduct, viewed in light of all the evidence, including evidence of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2006).  "Intent to deceive must be proved by clear and convincing evidence**."** *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988). After "[a] threshold finding[] of . . . intent [is] established, the court must weigh [it] to determine whether the equities warrant a conclusion that inequitable conduct occurred." *Molins*, 48 F.3d at 1178.

At the outset, Plaintiff argues Judge Hubel already made dispositive factual findings that Plaintiff did not misrepresent prior art to the Patent Office.  Plaintiff, however, is

61 – OPINION AND ORDER

incorrect.  In his analysis, Judge Hubel distinguished between common-law fraud and the lesser *prima facie* showing necessary to prove inequitable conduct.  Judge Hubel found only that Defendant failed to show James Wolfston, one of the inventors of the '042 and '278 patents, made the kind of misrepresentations to the Patent Office that would justify the production of documents reflecting attorney-client privileged communications. *See* Orders issued Oct. 20, 2004, and Oct. 28, 2004.  In any event, Judge Hubel's findings are not dispositive as to Defendant's inequitable conduct defense.  The Court, therefore, considers the merits of Plaintiff's Motion.

### A.    Prior Art.

In support of its inequitable conduct defense, Defendant alleges Plaintiff intended to deceive the Patent Office in its application for both patents when James Wolfston, the inventor of the patents, allegedly (1) misrepresented the asserted advances of these patents over the prior art embodied in Plaintiff's predecessor ApplyWebI, (2) failed to disclose National Computer System's "Entrata System," (3) failed to disclose Defendant's Legacy System, and (4) failed to identify Jon Batcheller as the principal inventor of the patents.

#### 1.    ApplyWebI.

ApplyWebI was a precursor to and was replaced by Plaintiff's ApplyWebII System.  Defendant asserts ApplyWebI

included prior art that should have been disclosed by Wolfston in
the patent applications for the '042 and '278 Patents relating to
ApplyWebII.  Defendant relies on the expert report and
Declaration of Barbara Frederiksen, who opines Wolfston misled
the Patent Office when describing the capabilities of ApplyWeb1.
Frederiksen Decl. ¶ 7.  Frederiksen concluded ApplyWeb1, which
was in use before the critical date for Plaintiff's '278
application, "reduced to practice all the elements of claim 1 of
the '278 patent"; *i.e.,* the ability to store and to retrieve
information from a student's first multi-page college application
so that it automatically appears in the appropriate data fields
of a subsequent application.  Frederiksen Decl. ¶ 17.

        Frederiksen concedes she was not asked whether
Plaintiff's ApplyWebI software was in public use but was asked
only to analyze whether it "would operate in a live environment."
Monkress Decl., Ex. 5; Frederiksen Dep. at 77-78.  She did so by
reviewing all of the source-code files that were in existence as
of June 4, 1997.  Plaintiff challenges the reliability of
Frederiksen's analysis because Frederiksen only examined draft
development source codes and did not examine the actual ApplyWebI
product that was in public use.  Plaintiff, however, does not
offer any direct evidence to establish as a matter of undisputed
fact that the systems in the development source codes reviewed by
Frederiksen were not in the ApplyWebI software that was in public

use.  Plaintiff argues only that Defendant lacks evidence to
establish that the systems were in the ApplyWebI software.  As
the moving party, however, Plaintiff has the burden of proof on
this issue.

"The scope and content of prior art" and "what the
prior art teaches" are "fact determinations."  *Para-Ordnance*
*Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed.
Cir. 1995).  On this record, therefore, the Court concludes a
genuine issue of material fact exists as to whether Plaintiff
fully disclosed prior art relating to ApplyWebI in its
application for the '278 Patent.  Accordingly, the Court denies
Plaintiff's Motion for Partial Summary Judgment (#372) to this
extent.

**2.  Entrata System.**

Defendant alleges Wolfston attended a conference in
1995 and made brief notes in a Palm Pilot regarding an "Entrata
System" demonstration by NCR.  The notes include the following:
"Can Store Common Profile" and "NCS converts data to EDI."
According to Defendant, the notes are "highly material" to the
prosecution relating to '278 and '042 Patents because they show
the Entrata System has the ability to "store a common profile"
and "electronically [to] send student information to Colleges in
a common electronic data format."  Defendant's conclusions
regarding the materiality of the notes, however, are not

64 - OPINION AND ORDER

supported by any expert testimony.  In addition, Wolfston

testified he had no memory of seeing an "Entrata Demo."  He

stated:  "My guess this might have been NACAC conference in the

fall of 1995."  Rassam Decl., Ex. 7; Wolfston Dep. at 14.  There

is not any other evidence in the record regarding the Entrata

System or its capabilities.

On this record, the Court concludes Defendant has

failed to present evidence sufficient to rebut Plaintiff's

evidence that Wolfston was not, and had no reason to be, aware of

capabilities of the Entrata System that might be material to the

patentability of the '278 and '042 Patents and that, as a result,

should have been disclosed.  Accordingly, the Court grants

Plaintiff's Motion for Partial Summary Judgment (#372) as to this

issue.

### 3. **The Legacy System**.

Defendant asserts Plaintiff had knowledge of

Defendant's online application known as the "Legacy System" in

1997, but Plaintiff failed to disclose it to the Patent Office as

prior art.  The sum total of Defendant's "evidence" is that

Plaintiff attended a conference in 1997 at which Defendant was an

exhibitor and in March 1999 Wolfston forwarded to an inventor an

e-mail that he received from "Scott" indicating "XAP and Expan

. . . currently have a system where they log into a secure server

and download new applications."  Rassam Decl., Ex. 9.

65 - OPINION AND ORDER

As with the Entrata System, the Court conclude Defendant has failed to present evidence sufficient to rebut Plaintiff's evidence that Wolfston was not and had no reason to be aware of capabilities of the Legacy System that might be material to the patentability of the '278 and '042 Patents and that, as a result, should have been disclosed.  Accordingly, the Court grants Plaintiff's Motion for Partial Summary Judgment (#372) as to this issue.

**B.   Nondisclosure of Inventor Batcheller.**

Defendant asserts Jon Batcheller was one of the inventors of '278 and '042 Patents, but Plaintiff did not disclose this information in its applications for those Patents.  Although there is evidence that Batcheller was involved in designing ApplyWebI, Plaintiff notes Batcheller does not make any claim to being an inventor of the '278 Patent or the '042 Patent.

In light of the Court's conclusion that a genuine issue of material fact exists as to whether ApplyWebI is prior art that should have been disclosed to the Patent Office, the Court also concludes a genuine issue of material fact exists as to whether Batcheller should have been disclosed as an inventor of the '278 and '042 Patents.  Accordingly, the Court denies Plaintiff's Motion for Partial Summary Judgment as to this issue.

C.    **Summary**

In summary, the Court

1.    **GRANTS** that part of Plaintiff's Motion for Partial Summary Judgment (#372) as to Defendant's affirmative defense of inequitable conduct to the extent that Plaintiff did not engage in inequitable conduct when its inventor, James Wolfston, did not disclose features of the Entrata System and Legacy System as anticipating Plaintiff's '042 and '278 Patents; and

2.    **DENIES** the balance of Plaintiff's Motion.


## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## RE ELEMENTS OF DAMAGES (#382)

**I.    Relief Sought.**

Defendant moves for summary judgment as to elements of damages that may be awarded to Plaintiff if it prevails in this action.  Defendant asserts (1) Plaintiff is not entitled to price-erosion damages and (2) Plaintiff's damages should be limited to those accruing after Defendant had actual notice of Plaintiff's Patents.

In response, Plaintiff contends it has presented sufficient evidence to establish with reasonable probability that it is entitled to the damages sought in this action, and, in any event, the amount of damages to which Plaintiff may be entitled are fact issues to be decided by the jury.

67 - OPINION AND ORDER

## II.  Analysis.

### A.  Price-Erosion Damages.

"To recover lost profits on a theory of price erosion, a patentee must show that 'but for' infringement, it would have sold its product at a higher price." *Ericsson, Inc. v. Harris Corp.,* 352 F.3d 1369, 1378 (Fed. Cir. 2004).  The patentee must also "present evidence of the (presumably reduced) amount of product the patentee would have sold at the higher price." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001).  Moreover, "the patentee's price erosion theory must account for the nature, or definition, of the market, similarities between any benchmark market and the market in which price erosion is alleged, and the effect of the hypothetically increased price on the likely number of sales at that price in the market." *Id.*

Plaintiff seeks damages for price erosion as a result of Defendant's alleged infringement of the '042 and '278 Patents. Defendant, however, contends the expert report of Plaintiff's damages expert is flawed and fails to establish Plaintiff's entitlement to price-erosion damages as a matter of law.

### 1.  Benchmark.

A benchmark for determining the price at which a product could be sold but for infringement by another product should be based on a similar product in a market not affected by

68 - OPINION AND ORDER

the alleged infringement.  *Crystal,* 246 F.3d at 1358-59.  In

*Grain Processing Corp. v. American Maize-Products Co.,* the court

stated:

> Reconstructing the market, by definition a
> hypothetical enterprise, requires the
> patentee to project economic results that did
> not occur.  To prevent the hypothetical from
> lapsing into pure speculation, this court
> requires sound economic proof of the nature
> of the market and likely outcomes with
> infringement factored out of the economic
> picture.

185 F.3d 1341, 1350 (Fed. Cir. 1999).  Defendant contends

Plaintiff's damages expert, William Partin, relies on a legally

improper benchmark price of $7 per processed application to

determine Plaintiff's price-erosion damages.

Partin's $7 benchmark was based on the price charged by

"Apply Yourself" for another product in the market.  According to

Plaintiff, Partin used this price as the benchmark because Apply

Yourself "was the closest competitor to CollegeNET absent

[Defendant], e.g., with respect to market share, the type of

online applications forms and services offered, and overall

business model."  Partin Decl. ¶ 9A-B.  Partin explained his

reasons for selecting Apply Yourself's product as the benchmark

as follows:

> The $7 figure comes from the price that Apply
> Yourself was charging as a benchmark price
> that CollegeNET could have charged.  It's
> clearly (*sic*) $7 was a price that Apply
> Yourself felt was not sufficient to allow it
> to generate profits and achieve its profit

projections. CollegeNET would have at least
increased its price but for [Defendant's]
infringement to equal what a competitor such
as Apply yourself was achieving.  I chose the
$7 number because it's a conservative
estimate of [Defendant's] impact on the
market.  Unfortunately there are not a lot of
historical transactions that would allow a
traditional pricing analysis here to be
performed.  But it's clear that [Defendant's]
presence in the market and providing
applications at - for free had a negative
impact on the prices al competitors could
charge.

* * *

Based on the fact that [Defendant's] offering
the same services within the market and
infringing on CollegeNET's patent caused it
to be unable to charge prices otherwise would
have been charged.  Clearly $7 is a price at
which a competitor was able to charge.

Tran Decl., Ex. 1; Partin Dep. at 180-82.

Plaintiff has asserted claims that Apply Yourself also

infringes Plaintiff's Patents.  *See CollegeNet, Inc. v. Apply

Yourself, Inc.,* 02-CV-484-HU.  Defendant, therefore, objects to

Partin's reliance on Apply Yourself's product because the

benchmark was obviously not determined based on a market free of

infringement.  According to Plaintiff, however, the only other

provider of services similar to Plaintiff is Princeton

Review/Embark, which charges $10-12 per processed application.

Plaintiff charges $5.71 and occasionally $7 per processed

application.  Plaintiff, therefore, argues a benchmark price of

$7, even if it is based on an infringing product, is a reasonable

70 - OPINION AND ORDER

and conservative approximation of the amount Plaintiff could charge in a free market absent Defendant's infringement.

On this record, the Court concludes genuine issues of material fact exist as to whether the $7 benchmark is a reasonable figure from which to determine price-erosion damages.

### 2. Price Elasticity.

Defendant also contends Plaintiff's price-erosion analysis is flawed because Partin failed to consider price elasticity in his analysis. The *Crystal* court addressed the concept of price elasticity as follows:

> According to the law of demand, consumers will almost always purchase fewer units of a product at a higher price than at a lower price, possibly substituting other products. For example, if substitution of a product were impossible and the product were a necessity, elasticity of demand would be zero--meaning consumers would purchase the product at identical rates even when the price increases. This very rare type of market is called inelastic. On the other side of the spectrum, if any price increase would eradicate demand, elasticity of demand would be infinite--meaning consumers would decline to purchase another single product if the price increases by any amount. This very rare type of market is called perfectly elastic. Id. Markets typically have an elasticity greater than zero and less than infinity.

246 F.3d at 1359.

Plaintiff's expert did not account for price elasticity in his price-erosion damages analysis because, in his opinion, the relevant market was inelastic within a range of $5.50 to

71 - OPINION AND ORDER

$7.00, and an increase in the price from $5.50 to $7.00 would not materially decrease demand for the type of product involved in this case.  "[T]he relevant range of price was insufficient in my opinion to trigger a reaction of decreased volume for a small incremental increase in price, especially given [Defendant's] influence on the market."  Tran Decl., Ex. 1; Partin Dep. at 184.

On this record, the Court concludes genuine issues of material fact exist as to the reasonableness of Plaintiff's evidence regarding elasticity in the price range for Plaintiff's product.

In summary, there are issues of fact that preclude summary judgment in Defendant's favor as to Plaintiff's entitlement to price-erosion damages.  The Court, therefore, denies Defendant's Motion for Summary Judgment (#382) to this extent.

**B.    Accrual of Damages.**

Defendant argues Plaintiff failed to comply with the marking requirements of the Patent Act and, therefore, is not entitled to damages for infringement before the date Defendant had actual notice of the Patents allegedly infringed.

The Patent Act provides in relevant part that a patentee :

> may give notice to the public that [its]
> patent] is patented, either by fixing thereon
> the word "patent" or the abbreviation "pat.",
> together with the number of the patent, or
> when, from the character of the article, this
> can not be done, by fixing to it, or to the
> package wherein one or more of them is

> contained, a label containing a like notice.
> In the event of failure so to mark, no
> damages shall be recovered by the patentee in
> any action for infringement, except on proof
> that the infringer was notified of the
> infringement and continued to infringe
> thereafter, in which event damages may be
> recovered only for infringement occurring
> after such notice. Filing of an action for
> infringement shall constitute such notice.

35 U.S.C. § 287(a).

Defendant asserts Plaintiff failed to comply with the statutory requirements for marking because Plaintiff "never marked any patented article with the '042 patent, including its own internal computer servers."  Defendant also asserts any stickers marking a reference to the '278 Patent on Plaintiff's internal computer servers were legally insufficient.

In response, Plaintiff argues there is a distinction between marking apparatus and marking methods:

> The purpose behind the marking statute is to
> encourage the patentee to give notice to the
> public of the patent.  Where the patent
> contains both apparatus and method claims,
> however, to the extent that there is a
> tangible item to mark by which notice of the
> asserted method claims can be given, a party
> is obliged to do so if it intends to avail
> itself of the constructive notice provisions
> of section 287(a).

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993).  Plaintiff also asserts compliance with the marking requirements is a question of fact:

> [O]nce marking has begun, it must be
> substantially consistent and continuous in

73 - OPINION AND ORDER

> order for the party to avail itself of the
> constructive notice provisions of the
> statute."  Id.  As the patentee, Maxwell had
> the burden of pleading and proving at trial
> that she complied with the statutory
> requirements.  577, 38 L.Ed. 426 (1894)
> ("[T]he duty of alleging, and the burden of
> proving, either [actual notice or
> constructive notice] is upon the
> [patentee].").  Compliance with section
> 287(a) is a question of fact.

*Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).

Plaintiff's '278 Patent was issued in February 2002.
Plaintiff presents evidence that the computer servers were the
only physical things that could be marked, Plaintiff began
marking them within days, and Plaintiff completed the marking six
weeks after the patent was issued.  In addition, Plaintiff's
institutional customers were given tours of the server rooms
where the marks could be seen.  In March 2002, Plaintiff posted a
press release on its website announcing the issuance of the '278
Patent and describing it in detail.  This website connects the
'278 Patent to Plaintiff's ApplyWebII system.  Later in December
2002, other parts of Plaintiff's website also identify the '042
Patent.

According to Defendant, Plaintiff's notice of the existence
of its Patents was not sufficient and did not satisfy the kind of
public notice contemplated by the statute.  Defendant asserts:
"Time and again, the Federal Circuit has held that marking must
provide public notice to be sufficient. . . .  Anything less than

74 - OPINION AND ORDER

distribution into the public marketplace is insufficient."

On this record, the Court concludes genuine issues of material fact exist as to whether the actions taken by Plaintiff gave reasonable public notice.  Accordingly, the Court denies Defendant's Motion for Summary Judgment (#382) as to Plaintiff's accrual of damages.

**IV.  Summary**

In summary, the Court **DENIES** Defendant's Motion for Summary Judgment (#382) Re Element of Damages.


**CONCLUSION**

For these reasons, the Court:

1.  **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Partial Summary Judgment (#371) of Infringement of U.S. Patent No. 6,560,042;

2.  **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Partial Summary Judgment (#372) on Inequitable Conduct Defense;

3.  **DENIES** Defendant's Motion for Summary Adjudication (#382) on Elements of CollegeNET's Patent Damages Claim;

4.  **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment Adjudication (#386) on the Invalidity of Claims 21, 23, 24, 27, 28, and 31 of U.S. Patent No. 6,345,278 and of Claims 15, 16, 18, 31, 32, 33, 34, 35, 36, and 44 of U.S. Patent No. 6,460,042; and

5.  **DENIES** Defendant's Motion for Summary Judgment (#391) of

Noninfringement.

IT IS SO ORDERED.

DATED this 17th day of July, 2006.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

76 - OPINION AND ORDER