IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLLEGENET, INC.,
a Delaware Corporation,

        Plaintiff,

v.

XAP Corporation,
a Delaware Corporation,

        Defendant.

03-CV-1229-BR

VERDICT, FINDINGS
OF FACT, AND
CONCLUSIONS OF LAW

**MICHAEL N. ZACHARY**
**SCOTT E. DAVIS**
**STEPHEN J. JONCUS**
**SAMIR N. PANDYA**
Klarquist Sparkman, LLP
121 S.W. Salmon St., Suite 1600
Portland, OR 97204
(503) 595-5300

1 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

**ARTHUR S. BEEMAN**
**WILLIAM G. GOLDMAN**
**M. ELIZABETH DAY**
DLA Piper Rudnick Gray Cary US LLP
153 Townsend St., Suite 800
San Francisco, CA 94107
(415) 836-2579

**SUSAN E. FOSTER**
Perkins Coie, LLP
1201 Third Ave., Suite 4800
Seattle, WA 98101
(206) 359-8846

          Attorneys for Plaintiff

**STEPHEN S. FORD**
Marger, Johnson & McCollom, P.C.
210 S.W. Morrison St., Suite 400
Portland, OR 97204
(503) 222-3613

**LYNN H. PASAHOW**
**CHARLENE M. MORROW**
**VIRGINIA K. DEMARCHI**
Fenwick & West LLP
Silicon Valley Center
801 California St.
Mountain View, CA 94041
(650) 988-8500

          Attorneys for Defendant


**BROWN, Judge.**

     This matter comes before the Court following a bench trial

on February 25-26, 2006, on certain issues reserved specifically

for the Court relating to Plaintiff CollegeNET, Inc.'s claim of

unfair competition under § 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a).


2 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

## BACKGROUND

On September 10, 2003, CollegeNET filed this action asserting claims against Defendant XAP Corporation for patent infringement of CollegeNET's online processing system of student college applications.

On June 25, 2004, the Court permitted CollegeNET to amend its Complaint to assert a claim under § 43(a) of the Lanham Act in which it alleged XAP engaged in unfair competition by making false representations to its customers regarding confidential information provided by students who use the XAP System when they apply for college.

From September 19, 2006, through October 5, 2006, the parties tried CollegeNET's patent-infringement claims to a jury. In addition, the jury was asked to determine whether XAP engaged in unfair competition under the Lanham Act and, if so, to assess subject to the Court's direction the amount of actual damages that CollegeNET sustained.  The Court advised the parties before trial that it would consider the jury's verdict on the Lanham Act claim to be advisory pending further post-trial proceedings.

On October 6, 2006, the jury returned a verdict in favor of CollegeNET on one patent-infringement claim.  The jury also found in favor of CollegeNET on its unfair-competition claim and assessed actual damages against XAP in the amount of $4.5 million.

3 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

The following issues pertaining to the Lanham Act claim were reserved for trial to the Court:  (1) whether CollegeNET's claim is barred under the doctrine of laches; (2) whether the jury's award of actual damages is binding, and, if so, whether the amount awarded should be enhanced; (3) whether CollegeNET is entitled to recover profits earned by XAP that were attributable to unfair competition and, if so, the amount; and (4) whether CollegeNET is entitled to reasonable attorneys' fees.

## **VERDICT**

The Court has evaluated and weighed all of the evidence presented during the jury trial and the trial to the Court and has completed its own deliberation.  Based on its Findings of Fact and Conclusions of Law as set forth below pursuant to Federal Rule of Civil Procedure 52(a), the Court's Verdict is as follows:

1.  CollegeNET's Lanham Act unfair-competition claim is not barred by laches;

2.  CollegeNET is entitled to actual damages in the total amount of $4.5 million without any enhancement;

3.  CollegeNET is not entitled to recover any of XAP's profits; and

4. CollegeNET is entitled to reasonable attorneys' fees and costs in an amount to be determined.

## FINDINGS OF FACT
## CONCLUSIONS OF LAW

The Court has fully considered the jury verdict entered on October 5, 2006, as to CollegeNET's Lanham Act unfair-competition claim. As instructed, the jury relied on the "preponderance of the evidence" standard when it found XAP engaged in unfair competition in violation of the Lanham Act and that CollegeNET was entitled to actual damages in the amount of $4.5 million. For the issues tried to the Court on February 25-26, 2007, the Court also relies on the preponderance of the evidence standard as to its Findings of Fact relating to laches and its review of the jury's actual damage award. The Court, however, relies on clear and convincing evidence as to those Findings of Fact relevant to CollegeNET's claims for enhancement of actual damages, disgorgement of XAP's profits, and recovery of attorneys' fees, all of which require proof of "willfulness" and/or "exceptional circumstances."

The Court also has fully considered all of the agreed facts and the testimony and documents as to disputed facts admitted during both trials.

5 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

**AGREED FACTS**

The following agreed facts are relevant to all issues:

CollegeNET and XAP each have developed computer systems that allow students to apply online for admission to colleges and universities.

CollegeNET charges each institution a fee for each student application processed online.

XAP offers online student application services free of charge to higher education and commercial institutions that participate in Mentor Systems created and marketed by XAP. XAP derives revenue in part from the sale of students' personal data submitted in their online applications to Mentor System participants including state agencies, departments of education, student-loan guarantee authorities, and commercial-lending institutions such as banks.

XAP makes the following privacy-policy statements or variations of these statements to students who use their online application process:

> Personal data entered by the user is not released to third parties without the user's express consent and direction.
>
> Your data belongs to you and no one else.  It is not made available or distributed to any party without your express consent and direction.

6 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

> Personal information regarding account
> holders is not released to any other party.
> The information you enter will be kept
> private and will be used only in accordance
> with your expressed consent and direction.
>
> XAP will not give, sell, or provide access to
> your personal information to any company,
> individual or organization for its use in
> marketing or commercial solicitation or for
> any other purpose, except as necessary for
> the operation of the site.

Supple. Pretrial Order ¶ III(A)(3) and (4).

At all relevant times, students who used certain XAP online application processes were asked the following "opt-in" question at the time an account was created:  "Are you interested in receiving information about students loans and financial aid?" If the students answered "yes," XAP forwarded the students' personal information to Mentor System participants in exchange for a fee.

## LACHES

XAP contends CollegeNET knew about XAP's practices that are the basis for its Lanham Act claim more than two years before CollegeNET filed its Fourth Amended Complaint adding the claim. According to XAP, CollegeNET's delay was unreasonable and prejudiced XAP.  CollegeNET, however, contends it filed its Lanham Act claim promptly after learning about the facts underlying it.

7 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

1.    **Standards**.

The affirmative defense of laches can defeat an otherwise valid claim under the Lanham Act. *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006). Because the Lanham Act does not contain an explicit statute of limitations, the court must first determine when the statute of limitations expired for the "most closely analogous action under state law." *Id.* The parties agree Oregon law, including its two-year statute of limitations for fraud, is most closely analogous to this case. *See Johannson v. Brown,* 797 F. Supp. 835, 839-40 (D. Or. 1992); *See also* Or. Rev. Stat. § 12.110(1). The limitations period begins to run "from the time the plaintiff knew or should have known about its potential cause of action." *Tillamook Country Smoker,* 465 F.3d at 1108. "If the plaintiff filed within that period, there is a strong presumption against laches. If the plaintiff filed outside that period, the presumption is reversed." *Id.*

The party that asserts laches must demonstrate it has suffered prejudice as a result of the plaintiff's unreasonable delay in filing a lawsuit. *Id.* Prejudice arising from delay in bringing a lawsuit may be, among other things, "[e]videntiary prejudice," which "includes such things as lost, stale, or

degraded evidence, or witnesses whose memories have faded or who have died." *Danjaq, LLC v. Sony Corp.,* 263 F.3d 942, 955-56 (9th Cir. 2001).  A defendant "may also demonstrate prejudice by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Id.*

2.  **Findings of Fact.**

The following findings are relevant to XAP's defense of laches:

On June 10, 2004, CollegeNET filed a separate action against XAP for unfair competition under the Lanham Act.  On June 25, 2004, CollegeNET moved to consolidate that action with this matter or, in the alternative, to amend its Complaint in this case to assert a claim under the Lanham Act.

On July 14, 2004, Magistrate Judge Dennis J. Hubel granted CollegeNET's Motion to Amend and, accordingly, denied CollegeNET's Motion to Consolidate as moot.

In 1999 and 2000, James Wolfston, CollegeNET's President, knew one of its competitors, Embark, was selling access to student information.  In March 2002, CollegeNET also was aware its competitors, including XAP, were seeking "to expand the potential of their business models by attempting to move loans, credit cards, or other products to students."

More than two years before it asserted its Lanham Act claim,

9 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

CollegeNET had reason to be suspicious that XAP and other competitors were selling student applicants' personal information to lending institutions.

In May 2004, after taking the deposition of Alan Jacobson, XAP's Chief Financial Officer, CollegeNET became aware that XAP specifically was treating a "yes" answer to the opt-in question as an "express consent and direction" for the sale of students' personal information to commercial-loan institutions.

Alan Firstenberg, XAP's Chief Executive Officer, died in March 2004 before CollegeNET filed its Amended Complaint to include its Lanham Act claim.  Firstenberg's death, however, did not prejudice XAP's ability to marshal a defense or to present facts to defend itself against CollegeNET's Lanham Act claim.

3.  **Conclusions of Law.**

XAP asserts James Wolfston, CollegeNET's President, suspected XAP was selling students' personal information more than two years before CollegeNET filed its Lanham Act claim and, therefore, CollegeNET knew or should have known about any potential unfair-competition claim more than two years before such a claim was added to CollegeNET's then-pending patent-infringement lawsuit against XAP.  Accordingly, XAP contends the presumption of prejudice applies, and CollegeNET's untimely filing of its Lanham Act claim should be barred by laches.

10 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

The Court disagrees.  The sale of students' personal information was only one element of CollegeNET's grievance and, standing alone, did not give rise to an unfair-competition claim.  An essential element of XAP's deceptive practice was the artifice of treating a student's "yes" answer to the "opt-in" question as an "express consent and direction" for XAP to sell the information.  CollegeNET only learned about that artifice at the deposition of Alan Jacobson in May 2004, which was only a few weeks before CollegeNET sought to amend its Complaint to assert its Lanham Act claim.

On this record, the Court concludes CollegeNET was not aware of all the facts necessary to support a potential claim under the Lanham Act until May 2004 and, therefore, did not unduly delay by bringing the claim a month later.  Accordingly, CollegeNET's Lanham Act claim is not barred by laches.


## **DAMAGES**

CollegeNET seeks actual damages, enhanced damages, and disgorgement of XAP's profits.

CollegeNET contends the jury's award of actual damages in the amount of $4.5 million is binding on this Court based on CollegeNET's Seventh Amendment right to a jury trial.  CollegeNET also contends the Court, in the exercise of its discretion,

11 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

should award enhanced actual damages and disgorgement of XAP's profits based on XAP's willful misconduct.

XAP, however, contends CollegeNET was not entitled to a jury trial on actual damages, and the jury's award of actual damages, therefore, should be reduced.  XAP also contends an award of enhanced damages would be improper and disgorgement of XAP's profits to CollegeNET would be inequitable.

1.  **Standards**.

    a.  The Jury Award.

Under Section 35(a) of the Lanham Act, when a violation of the unfair-competition provisions of Section 43(a) of the Act occurs, "the plaintiff shall be entitled . . ., subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  Such profits and damages shall be assessed either by the court or shall be "caused to be assessed under [the Court's] direction."  *Id.*

The extent of the court's discretion to alter a jury's finding as to a monetary award is determined by whether the verdict is for the plaintiff's actual damages or for disgorgement of the defendant's profits:

> In assessing *damages* the court may enter judgment, according to the circumstances of the case, for any sum *above the amount found as actual damages, not exceeding three times*

> *such amount.*

15 U.S.C. § 1117(a)(emphasis added).  This provision does not

allow for a downward adjustment of actual damages.  *Go Med.*

*Indus. Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264 (Fed. Cir. 2006).

The statute, however, allows for either an increase or a

decrease in an award of the defendant's profits to the plaintiff:

> If the court shall find that *the amount of*
> *the recovery based on profits is either*
> *inadequate or excessive* the court may in its
> discretion enter judgment for such sum as the
> court shall find to be just, according to the
> circumstances of the case."

15 U.S.C. § 1117(a)(emphasis added).

The statute's grant of this "unusual power and

responsibility" to the district court "both implements the

broad equitable discretion generally accorded to courts in

trademark matters and recognizes the occasional danger that

verdicts based on [technical trademark] formulations will do

serious injustice."  *Lurzer GMBH v. Am. Showcase, Inc.*,

75 F. Supp. 2d 98, 105 (S.D.N.Y.,1998) (citing *Stuart v. Collins*,

489 F. Supp. 827, 834 (S.D. N.Y. 1980)).  *See also Merriam-*

*Webster, Inc. v. Random House, Inc.*, 815 F. Supp. 691

(S.D. N.Y. 1993)("As in any jury award pursuant to Section 35(a)

of the Lanham Act, this Court has the discretion to alter the

recovery based on defendant's profit if it finds the jury's award

to be either inadequate or excessive.").

13 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

    b.  <u>Willful Misconduct</u>.

    A finding that the defendant engaged in willful misconduct
is not a prerequisite to an award of actual damages under Section
35(a) of the Lanham Act if the measure of such damages is
calculated by the amount of the defendant's profits.  *Ardray v.
Ardry-Mart, Inc.,* 76 F.3d 984, 988 (9th Cir. 1996)(citing *Lindy
Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1407-09 (9th Cir.
1993)).

    When the plaintiff is unable to prove actual damages based
on any measure, however, courts in the Ninth Circuit have
generally allowed a monetary award based on equitable theories of
unjust enrichment and deterrence.  *See Lindy Pen,* 982 F.2d at
1406-1407.  To obtain such a recovery, the plaintiff must
establish the defendant engaged in "willful misconduct."  *Id.* at
1405.  *See also Maier Brewing Co. v. Fleischmann Distilling
Corp.*, 390 F.2d 117, 123 (9th Cir. 1968), *cert. denied*, 391 U.S.
966 (1968)(the court has wide discretion to require an accounting
of profits for deliberate and willful trademark infringement).

    "Willful [misconduct] carries a connotation of deliberate
intent to deceive.  Courts generally apply forceful labels such
as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to
conduct that meets this standard."  *Lindy Pen,* 982 F.2d at

14 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

1406; *National Lead Co. v. Wolfe*, 223 F.2d 195, 205-06 (9th Cir.
1955), *cert. denied,* 350 U.S. 883 (1955)(recovery of profits were
allowed when there was unfair competition based on a deliberate
and intentional design to cause confusion by false advertising).

The Ninth Circuit, however, has cautioned that a showing
of willful misconduct does not compel an award of profits, which
reflects the equitable nature of the remedy.  *See Faberge, Inc.*
*v. Saxony Prods., Inc.*, 605 F.2d 426 (9th Cir. 1979)(willful
infringement may support an award of profits, but it does not
require one).[1]

A finding of willful misconduct under the Lanham Act must be
supported by clear and convincing evidence.  *See Tamko Roofing*
*Prods., Inc. v. Ideal Roofing Co., Ltd.*, 294 F.3d 227, 229
(1st Cir. 2002).  *See also Versa Prods. Co., Inc. v. Bifold Co.*
*(Mfg.) Ltd.*, 50 F.3d 189, 208 (3d Cir. 1995); *Castrol, Inc.*
*v. Pennzoil Quaker State Co.,* 169 F. Supp. 2d 332, 341 & n.8
(D. N.J. 2001).

c.  <u>Actual Damages</u>.

Section 35(a) of the Lanham Act allows for an award of

---

[1] In 1999 Congress amended § 35(a) of the Lanham Act to
specify a "willfulness" requirement as to "remedies for dilution
of famous marks" under Section 43(c) of the Act.  The Fourth
Circuit, in *Synergistic Int'l, LLC v. Korman,* noted:  "In light
of this revision, we agree that willfulness is not an essential
prerequisite for a damages award, but . . . it remains a highly
pertinent factor."  470 F.3d 162, 175 n.13 (4th Cir. 2006).

actual damages suffered by the plaintiff as a result of unfair competition to be "assessed under [the court's] direction."

As noted, the plaintiff may prove actual damages based either on its lost sales or on the defendant's profits as a measure of lost sales. *Ardray v. Ardy-Mart, Inc.,* 76 F.3d 984, 988 (9th Cir. 1995).

A plaintiff that seeks lost profits rather than an injunction as its remedy for unfair competition must prove the actual deception of a significant portion of the consuming public. *See Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 208 (9th Cir. 1989). In the absence of actual evidence of deception, the court may presume consumers were deceived if the deception was intentional. *Id.* at 209. The defendant may rebut the presumption by presenting evidence that it did not succeed in the deception. *U-Haul Int'l, Inc. v. Jartran*, 793 F.2d 1034, 1041 (9th Cir. 1986).

d. <u>Disgorgement of Profits</u>.

If the defendant willfully violated § 43(a) of the Lanham Act, a plaintiff may be entitled to recover the defendant's profits under § 35(a) of the Act "subject to the principles of equity." 15 U.S.C. § 1117(a). *See also U-Haul Intern., Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1042 (9th Cir. 1986)(the remedies available under § 35(a) of the Lanham Act apply to unfair-

16 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

competition claims as well as trademark-infringement claims brought pursuant to § 43(a) of the Lanham Act).

The purpose of § 35(a) is to "take all the economic incentive out of [unfair competition]." *Polo Fashions, Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132, 1135 (9th Cir. 1986). Nevertheless, § 35(a) specifically provides an award of the defendant's profits "shall constitute compensation, not a penalty." 15 U.S.C. § 1117(a). *See also Maier Brewing Co.*, 390 F.2d at 121.

Accordingly, disgorgement of profits in direct-competition cases may be necessary "to secure the return of all profits" to the plaintiff. *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.,* 692 F.2d 1272, 1274 (9th Cir. 1982). *But cf. Maier Brewing Co.,* 390 F.2d at 121-24 (cases involving direct competition "will arise where there will be sufficient provable damages to effectuate the policies of the Act without the granting of an accounting for profits.").

e.  Enhancement of Actual Damages.

Under § 35(a), the court, in the exercise of its discretion and "according to the circumstances of the case," may increase the sum awarded as actual damages "not exceeding three times such amount." *Maier Brewing Co.,* 390 F.2d at 121-24. *See also*

17 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

*Taco Caban Int'l, Inc*. *v. Two Peso, Inc., 932 F.2d 1113, 1127*
(5th Cir. 1991)(a "willful" violation is sufficient to justify
enhanced damages).

Section 35(a) of the Lanham Act authorizes the court
to award up to three times a plaintiff's actual and proven
damages "so long as the result is compensatory, not punitive."
15 U.S. C. § 1117(a).  *See also BASF Corp. v. Old World
Trading Co., Inc.*, 41 F.3d 1081, 1096 (7th Cir. 1994)("the Act
specifically provides that enhancement is only available to
ensure that the plaintiff receive compensation."); *ALPO Petfoods,
Inc. v. Ralston Purina Co*., 997 F.2d 949, 955 (D.C. Cir. 1993)
(enhanced actual damages are a "catch-all enhancement" that are
"appropriate to compensate a Lanham Act plaintiff only for such
adverse effects as can neither be dismissed as speculative nor
precisely calculated.").

**2.   Findings of Fact.**

   a.   Willful Misconduct.

The Court finds the evidence is clear and convincing that
XAP did not inform students that XAP deemed they were expressly
consenting to and directing the release and sale of their
personal information to third parties such as commercial lenders
when they checked the "yes" box on the opt-in question.  The

Court also finds the evidence is clear and convincing:

• that XAP could have included language to clarify that a "yes" response to the "opt-in" question constituted a student's "express consent and direction" to the release and sale of the student's personal information;

• that XAP made the choice not to inform students of the consequences of checking the "yes" box because XAP concluded it was a "bad idea" that would result in fewer opt-ins and reduced revenue, and

• that XAP intended its privacy-policy statements to lull students into a false sense of security regarding the privacy of the personal information included on the college applications that they submitted online to the various Mentor Systems.

b.  <u>Actual Damages</u>.

The Court submitted CollegeNET's claim for actual damages to the jury for an advisory verdict and deferred the question whether CollegeNET had a right to a jury trial until after trial to the Court.

CollegeNET did not present direct evidence by students that they were deceived by XAP's privacy-policy statements and XAP's failure to inform students that a "yes" answer to the opt-in question constituted "express consent and direction" to the sale of their personal information.  The Court, however, finds all

19 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

reasonable inferences from the evidence create a presumption that students were actually deceived and that XAP knew its deception substantially increased the number of students who answered "yes" to the opt-in question.  Moreover, XAP did not present any credible evidence to rebut that presumption.

CollegeNET presented expert testimony that it suffered approximately $35 million in actual damages.  This amount was based on the assumption that all of XAP's online student college applications included the opt-in feature.  According to the evidence, however, only 15% of XAP's online student applications included the opt-in feature.

The jury found CollegeNET suffered actual damages in the amount of $4.5 million as a result of XAP's deceptive conduct. The Court notes the jury's verdict is slightly less than 15% of the total amount of actual damages claimed by CollegeNET.

c.  Disgorgement of XAP's Profits.

XAP's net profits from its online student applications that featured the opt-in question totaled $2,553.245.

d.  Enhancement of Actual Damages.

The jury's award of actual damages in the amount of $4.5 million reasonably compensates CollegeNET for its actual damages arising from XAP's deception.

20 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

3.    **Conclusions of Law**.

   a.    <u>The Jury Award</u>.

   Section 35(a) of the Lanham Act clearly grants the Court the discretionary authority under certain circumstances to enhance but not to reduce the jury's award of $4.5 million in actual damages to CollegeNET.  Conversely, the statute plainly grants the Court, in the exercise of its discretion, the power to increase or to reduce an award based on XAP's profits.  Based on § 35(a), however, the Court concludes it does not have the authority to reduce the jury's award of $4.5 million in actual damages to CollegeNET.  In any event, as noted below, the Court also concludes the jury's award reasonably compensates CollegeNET for the actual damages caused by XAP's unfair competition, and, therefore, there is not any equitable reason to reduce the award.

   b.    <u>Willful Misconduct</u>.

   The Court has found XAP actually deceived students by failing to inform them that XAP deemed they were giving "express consent and direction" to the release and sale of their personal information to financial institutions and other third parties solely by answering "yes" to the opt-in question on their online college applications.  XAP also made a conscious, knowing, business decision to reject proposals by at least one of their

21 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

Mentor System customers to make clear to students the consequence of a "yes" answer to the "opt-in" question.  At both the jury trial and the bench trial, XAP witnesses, nonetheless, touted all five of XAP's privacy-policy statements as models of clarity, particularly in an environment where identity theft is rampant.

The only reasonable inference and conclusion to be drawn from this record is that XAP used its privacy-policy statements to mislead students and to give them a false sense of security that their personal information would remain private.  XAP engaged in this deceptive practice for the sole purpose of increasing the number of "yes" responses to the "opt-in" question and, thereby, increasing their revenue.

In addition, XAP's conduct enabled it to process students' online  applications to colleges and universities free of charge while CollegeNET was required to charge colleges and universities a fee for every application processed, which resulted in XAP's obvious unfair competitive advantage over CollegeNET.

On this record, the Court concludes XAP's unfair competition was willful.

    c.  <u>Actual Damages</u>.

CollegeNET and XAP compete with each other in the online student college-application processing business.  CollegeNET

22 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

presented to the jury substantial expert testimony of its alleged lost profits resulting from XAP's unfair competition.  The jury verdict in favor of CollegeNET in the amount of $4.5 million actual damages was consistent with the record in light of the undisputed evidence that only 15% of the online student college applications processed by XAP included the opt-in question.

On this record, the Court concludes the jury's verdict awarding CollegeNET $4.5 million is fair and reasonable compensation for CollegeNET's actual damages suffered as a result of XAP's unfair competition.  The Court, therefore, adopts the verdict as its own to the extent it has the discretion to do so.

d.  <u>Disgorgement of Profits</u>.

As discussed, the Court concludes the actual damages awarded to CollegeNET by the jury constitute reasonable compensation to CollegeNET arising from XAP's unfair competition.  CollegeNET did not present evidence or attempt to argue that the only reasonable measure of its lost profits was the amount of XAP's profits nor could it reasonably do so in light of the competition between the two businesses.  Accordingly, equity does require a disgorgement of XAP's profits in order to compensate CollegeNET fully for its losses.

On this record, the Court concludes a disgorgement of XAP's

profits would constitute a prohibitive penalty against XAP rather than appropriate compensation to CollegeNET.

  e. <u>Enhancement of Actual Damages</u>.

  For all of the above reasons regarding disgorgement of XAP's profits, the Court concludes CollegeNET is reasonably compensated by the jury's award of $4.5 million actual damages and, in the exercise of its discretion, that CollegeNET's actual damages award should not be enhanced because any such enhancement would constitute a penalty.


## ATTORNEYS' FEES

  Section 35(a) of the Lanham Act authorizes the Court, in its discretion, to award attorneys' fees to the prevailing party in "exceptional circumstances." 15 U.S.C. § 1117(a). Such circumstances include "cases in which the act is fraudulent, deliberate, or willful." *Horphag Research Ltd. v. Garcia,* No. 04-55373, 2007 WL 45910, at *7 (9th Cir. Jan. 9, 2007).

  For all the reasons stated above, the Court concludes XAP engaged in willfully deceptive misconduct that resulted in damages to CollegeNET and thereby established the exceptional circumstances that justify an award of reasonable attorneys' fees to CollegeNET.


24 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

## CONCLUSION

For these reasons, the Court concludes Plaintiff CollegeNET's Lanham Act unfair-competition claim is not barred by the doctrine of laches and renders its Verdict in favor of CollegeNET and against XAP on that claim in the amount of $4.5 million and in favor of CollegeNET for reasonable attorneys' fees and costs incurred herein.

IT IS SO ORDERED.

DATED this 26th day of March, 2007.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

25 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW