IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **COLLEGENET, INC.,**<br>a Delaware Corporation,<br><br>       Plaintiff,<br><br>v.<br><br>**XAP Corporation,**<br>a Delaware Corporation,<br><br>       Defendant. | 03-CV-1229-BR<br><br>OPINION AND ORDER |

**SCOTT D. EADS**
Perkins Coie LLP
1120 N.W. Couch St., 10th Floor
Portland, OR 97209-4128
(503) 727-2000

**SUSAN E. FOSTER**
Perkins Coie LLP
1201 Third Ave., Ste. 4800
Seattle, WA 98101-3099
(206) 359-8846

       Attorneys for Plaintiff

1   - OPINION AND ORDER

**DAVID W. AXELROD**
**JOHNATHAN E. MANSFIELD**
**YVONNE E. TINGLEAF**
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 S.W. 5th Ave., Suite 1900
Portland, OR 97204

       Attorneys for Defendant

**BROWN, Judge.**

     This matter comes before the Court on Plaintiff CollegeNET, Inc.'s Motion for Permanent Injunction (#717) regarding its claim against Defendant XAP Corporation under the Lanham Act, 15 U.S.C. § 1125(a). Alternatively, Plaintiff seeks permission to conduct additional discovery to develop the record in support of this Motion.

     For the following reasons, the Court **GRANTS** Plaintiff's Motion for Permanent Injunction.

## BACKGROUND

     Plaintiff brought this action for both patent infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). On the unfair-competition claim, Plaintiff alleged Defendant made false representations regarding the privacy of personal information provided by students who used Defendant's online system to apply for admission to college.

2   - OPINION AND ORDER

From September 19 to October 5, 2006, the Court presided over a jury trial on the patent-infringement claim and as to liability on the unfair-competition claim.  As to the latter, the Court also sought an advisory jury verdict as to any damages that Plaintiff sustained as a result of unfair competition.  The jury found in favor of Plaintiff on both claims and set the unfair-competition damages to be paid by Defendant at $4.5 million.

On January 25-26, 2007, the Court conducted a court trial as to the equitable issues remaining on the unfair-competition claim.[1]  On March 26, 2007, the Court adopted the jury's advisory verdict as to unfair-competition damages and entered a Verdict on that claim in Plaintiff's favor against Defendant in the amount of $4.5 million.  The Court also concluded Defendant's unfair competition was willful, which constituted exceptional circumstances sufficient to justify an award of attorneys' fees to Plaintiff.

## **STANDARDS**

A plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury, (2) remedies available at law such as monetary damages are inadequate to compensate for that injury, (3) a remedy in equity is warranted considering

---

[1] On June 17, 2008, the Court will conduct a bench trial on the inequitable conduct defense remaining on Plaintiff's patent-infringement claim.

3  - OPINION AND ORDER

the balance of hardships between the plaintiff and the defendant, and (4) the public interest would not be disserved by a permanent injunction.  *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006).  "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations."  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993).

### DISCUSSION

The gravamen of Plaintiff's request for a permanent injunction is that Defendant continues to deceive students in the manner the jury found to be wrongful, *i.e.*, by deceiving them into checking the "Yes" option believing they are only applying directly to specific colleges and universities for admission when, in fact, Defendant still has not clearly disclosed to the students that they are consenting to the sale of their personal information to third parties.  As a result, Plaintiff contends it continues to be irreparably harmed because it cannot reasonably compete for the business of colleges and universities who must pay CollegeNET directly for online college-application services while the same colleges and universities can receive the benefit of XAP's online college-application system for free.

Plaintiff contends its earlier calculation of damages,

4 - OPINION AND ORDER

which ultimately resulted in the $4.5 million damage award, was based on the assumption that Defendant would discontinue its unfair-competition practices.  In any event, Plaintiff contends the award does not fully compensate Plaintiff for its continuing losses, and Defendant's uncertain financial condition is likely to impair CollegeNET's ability to collect the judgment that will eventually be entered.  Moreover, according to Plaintiff, the present value of the still unpaid damages has decreased because of the delay in entering a final judgment.  Thus, the issue before the Court is whether a permanent injunction should be issued pending the entry of final judgment and, if so, the scope of the injunction.

    1.    **Defendant's Pre-Verdict Practices**.

Plaintiff alleged and a jury found Defendant deceptively obtained and sold the personal information of students who used Defendant's Mentor websites to submit online college-admission applications even though Defendant represented that such information "will not be released to third parties without the [student's] express consent and direction."  In most cases, Defendant's websites included an "account set-up screen" containing the statement:  "The information you enter will be kept private in accordance with your express consent and direction."  Students were deemed to have given "express consent

5  - OPINION AND ORDER

and direction" if they checked the "Yes" box when asked whether they wished to receive information about student loans or financial aid. Students were not informed that when they checked the "Yes" box, they were authorizing Defendant to share their personal data with commercial enterprises that were in the business of providing students with financial aid and student-loan products and services.

 2. **Defendant's Post-Verdict Practices**.

Defendant contends it has revised its practices since 2006 by (1) dropping private, nonstate agency mentors; (2) dropping the opt-in question at all but two mentor sites ("GoHigherKy", which is sponsored by the Kentucky Higher Education Assistance Authority (KHEAA), and "GAcollege411", which is sponsored by the Georgia Student Finance Commission (GSFC)); (3) using a disclosure statement that is substantially the same as the one used by Free Application for Federal Student Aid (FAFSA); (4) adding language surrounding the opt-in question that clearly indicates the student information that is collected, the reasons for collecting it, how it is used, and with whom it is shared; (5) not selling student information; and (6) changing senior management.

Although Defendant asserts it no longer sells student information, KHEAA contracted to pay Defendant $378,216 in 2006

for the "purpose of maintaining and operating the [website]." In 2004 GSFC contracted to pay Defendant an annual fee of $217,718.45 with rates to be increased each year thereafter to operate and to maintain its website.  Accordingly, those universities and colleges within the aegis of KHEEA and GSFC continue to reap the benefit of Defendant's online application process free of charge whereas they would have to pay Plaintiff a fee to obtain similar services.

Lori Fena, Plaintiff's trial expert, reviewed the changes made by Defendant and concludes they are still deceptive in that Defendant continues to use the opt-in question as a representation of the students' "express consent and direction" without stating explicitly what "opting-in" means at least at two of Defendant's Mentor sites (KHEEA and GSFC).  Thus, according to Fena, Defendant's system leaves "the infrastructure for deception" in place.  Fena summarizes her position as follows:

> The addition of vague language embedded in marketing statements around the opt-in mechanism that alludes to potential disclosure of "information you otherwise provide us" does not meet Defendant's advertised standard of "express consent and direction" prior to disclosure, nor does it meet the industry standards of clear and concise notice or fair information practices. Most importantly, a student reading this language would not reasonably understand that Defendant will take sensitive personal

7 - OPINION AND ORDER

>           information from the student when they apply
>           to colleges or for financial aid, and
>           Defendant will consider this "information you
>           otherwise provide us" and send it to sponsors
>           and business partners.  Addition of vague
>           language serves only to conceal rather than
>           disclose important consent information.

Pl.'s Mem., Fena Supplemental Decl. at 6.

    Fena challenges the effectiveness of Defendant's changes on the following grounds:  (1) the additional language includes extensive marketing statements that bury any useful disclosure regarding the consequences of checking the "Yes" box; (2) the opt-in statement remains unchanged; (3) the personal information collected is not identified immediately above or below the opt-in statement; (4) Defendant's statement that "information you otherwise provide us" is broad and vague because the students do not know up to that point what information (such as a Social Security number) will be required; and (5) contrary to Defendant's contention, Defendant's privacy policy disclosure statement differs from the one used by FAFSA in that Defendant's disclosure statement is surrounded by marketing statements, does not identify the fields of personal information to be disclosed at the place where the privacy statement is made, and does not specifically state at the place where the students are asked to "opt-in" that the personal information will be sent to KHEEA and GSFC.  Fena also contends Defendant is selling the student

information regardless whether Defendant actually charges a fee as to each student who checks "Yes" on the opt-in question or bundles the fee into a lump-sum annual contract fee.

Defendant asserts Fena's criticisms are "false" and Defendant's revenue is limited to its "licensing and operating fee." Defendant, however, does not explain why KHEEA and GSFC pay Defendant substantial fees if it is not in part to obtain the right to use the personal information provided to Defendant by students for the purpose of identifying potential customers for services offered by those agencies.

On this record, the Court concludes Defendant's revisions to its online application process continue to be inadequate because they fail to convey in clear and unequivocal language that when they check the "Yes" box, students are giving "express consent and direction" to Defendant to provide their personal information to third parties who have paid a fee to Defendant in part for their right to receive that information.

### 2. **Plaintiff's Competitive Disadvantage**.

For the reasons stated above regarding Defendant's agreements with KHEEA and GSFC, the Court concludes Plaintiff remains at a competitive disadvantage based on Defendant's continued failure to state clearly to students that they are authorizing the transfer of their personal information by

Defendant to third parties solely by checking the "Yes" box to the opt-in question.

    **3.**    **Irreparable Harm to Plaintiff**.

Plaintiff contends it suffered damage far greater than the the $4.5 million awarded at trial because, in part, the award did not compensate Plaintiff for its future damages such as those it continues to suffer as a result of Defendant's ongoing deceptive practices.  According to Plaintiff, Defendant's ongoing deceptive practices continue to cause Plaintiff irreparable harm because it will "continue to suffer price erosion and market share loss as a result of the stickiness of the market"; *i.e.*, an unwillingness of customers to change service providers for economic reasons. Finally, Plaintiff contends it continues to suffer from the loss of goodwill resulting from Defendant's ongoing misinformation campaign attempting to explain away the jury's Verdict.

Defendant, however, contends the jury did not have a reason to undervalue the damages suffered by Plaintiff, the Verdict adequately compensated Plaintiff for any harm that Plaintiff may have suffered, and Plaintiff chose not to request damages for loss of goodwill.

The Court agrees with Plaintiff that it continues to suffer irreparable harm by remaining at a competitive disadvantage to Defendant as to online application systems used by Defendant that

do not adequately disclose to students that they are authorizing Defendant to provide their personal information to third parties such as KHEAA and GFSC if the students answer "Yes" to the opt-in question on Defendant's websites that are sponsored by KHEAA and GFSC.  The Court, however, rejects Plaintiff's argument that the damage award of $4.5 million was inadequate.  Plaintiff sought far greater damages.  The jury and this Court, however, found the damages fairly compensated Plaintiff based on the evidence presented at trial.

    5.   **Balance of Hardships**.

    The Court concludes it is not an undue hardship to require Defendant to revise its online application system by including language that makes clear to students that a "Yes" answer to the opt-in question will result in the disclosure of their personal information to third parties.

    6.   **Public Interest**.

    The Court concludes it is in the public interest for students to be made aware unequivocally of the consequences of checking the "Yes" box on Defendant's opt-in question by conspicuous language at the point where the opt-in question appears.

    In summary, the Court concludes Plaintiff is entitled to equitable relief in the form of a permanent injunction that

11 - OPINION AND ORDER

requires Defendant specifically to inform student applicants in plain, concise, and conspicuous language set forth immediately preceding the opt-in question that by answering "Yes" to that question the applicant understands he or she specifically is authorizing Defendant to disclose the following personal information to the appropriate Mentor:  [a description of the personal information that will be disclosed] to the following: [a list of all entities that will receive any or all of the personal information] for purposes of [a description of all purposes for which the information is submitted].

The Court notes Plaintiff proposes the Court include a provision in its order that requires Defendant to notify colleges or universities who participate in the Mentor program that the personal information of student applicants will be disclosed to third parties.  The jury Verdict in this case, however, did not include a determination that Defendant deceived universities or colleges regarding any aspect of its Mentor program, and, therefore, the Court concludes that provision is not appropriate or necessary.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff CollegeNET's Motion for a Permanent Injunction (#717).  Plaintiff CollegeNET shall submit to the Court a proposed form of Permanent Injunction

12 - OPINION AND ORDER

consistent with this Opinion and Order no later than May 2, 2008. Defendant XAP shall submit its objections, if any, to the proposed form of Permanent Injunction no later than May 12, 2008.

IT IS SO ORDERED.

DATED this 17th day of April, 2008.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Court

13 - OPINION AND ORDER