IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLLEGENET, INC.,
a Delaware Corporation,

        Plaintiff,

v.

XAP Corporation,
a Delaware Corporation,

        Defendant.

03-CV-1229-BR

VERDICT, FINDINGS
OF FACT, AND
CONCLUSIONS OF LAW

SCOTT D. EADS
Perkins Coie LLP
1120 N.W. Couch St., 10th Floor
Portland, OR 97209-4128
(503) 727-2000

SUSAN E. FOSTER
JESSICA ROSSMAN
ELANA MATT
Perkins Coie LLP
1201 Third Ave., Ste. 4800
Seattle, WA 98101-3099
(206) 359-8000

        Attorneys for Plaintiff

1 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

**DAVID W. AXELROD**
**JOHNATHAN E. MANSFIELD**
**YVONNE E. TINGLEAF**
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 S.W. 5th Ave., Suite 1900
Portland, OR 97204
(503) 222-9981

       Attorneys for Defendant

**BROWN, Judge.**

    This matter comes before the Court following a four-day bench trial that began on June 18, 2008, and, after supplemental briefing, closing arguments on September 8, 2008, regarding Defendant XAP, Inc.'s Counterclaim.  In that Counterclaim, XAP asserts Plaintiff CollegeNET, Inc., engaged in inequitable conduct when it first applied for the 6,345,278 Patent ('278 Patent) and the 6,460,042 Patent ('042 Patent) from the United States Patent and Trademark Office (PTO) and when it sought reexamination of the '042 Patent.  Although XAP also expected to try to the Court in the same proceeding a Counterclaim and Affirmative Defense that CollegeNET's Claim 21 of the '278 Patent is barred under the Doctrine of Prosecution History Estoppel, the Court ruled XAP waived this Counterclaim and Affirmative Defense when it failed to preserve the issues during the infringement phase of the 2006 jury trial in this case.  *See* Opin. and Order (issued Sept. 4, 2008).  The Court, nonetheless, permitted the parties to present evidence and arguments on the substantive

2 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

issues underlying the defense to complete the record for appellate review.[1]

**VERDICT**

After evaluating and weighing all of the evidence and based on its Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a) as set forth below, the Court renders its Verdict in favor of CollegeNET and against XAP on XAP's Counterclaim for Inequitable Conduct.

**BACKGROUND**

This trial held in June 2008 is the latest chapter in a protracted saga of litigation involving CollegeNET and those competitors of CollegeNET that have developed online college-application systems that allegedly infringe the CollegeNET patents at issue.

On September 19, 2006, the first trial in this case was before a jury on CollegeNET's patent claims and its unfair-competition claim against XAP under the Lanham Act, 15 U.S.C. § 1125(a). Before trial, the Court reserved certain Lanham Act issues for a later bench trial, including XAP's laches defense;

---

[1] Although the Court considered making a contingent finding on the issue of "tangentiality," the Court now concludes it is unnecessary to do so.

3 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

the amount of damages, if any; and attorneys' fees. The Court also reserved XAP's equitable defenses of inequitable conduct and prosecution history estoppel for an additional bench trial.

On October 5, 2006, at the conclusion of the 13-day jury trial, the jury returned a Verdict in favor of CollegeNET on one patent claim and found XAP infringed Claim 21 of CollegeNET's '278 Patent under the Doctrine of Equivalents. The jury awarded CollegeNET the sum of $4 million in damages on that claim.

In an advisory finding, the jury also determined XAP unfairly competed with CollegeNET in violation of the Lanham Act and assessed damages of $4.5 million in CollegeNET's favor. On January 25-26, 2007, after a bench trial on the Lanham Act issues reserved for the Court, the Court adopted the jury's advisory award of $4.5 million damages to CollegeNET. The Court also awarded CollegeNET its reasonable attorneys' fees after finding the case involved "exceptional circumstances" based on XAP's willfully deceptive misconduct. *See* Verdict, Findings of Fact, and Conclusions of Law (issued Mar. 26, 2007).

The patents at issue in both the jury trial and the June 2008 bench trial pertain to CollegeNET's ApplyWeb2 system, which succeeded its earlier ApplyWeb1 system. In the June 2008 bench trial, XAP sought to prove that during both the initial 1999-2001 patent-application proceedings and the subsequent 2007 reexamination proceedings, CollegeNET failed to disclose and/or

4 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

made material misrepresentations to the PTO concerning prior art embodied in CollegeNET's ApplyWeb1 system.  XAP also sought to prove that CollegeNET failed to disclose and/or materially misrepresented commercial sales as to ApplyWeb1 and its related SallieMae/Smart Loan program that occurred before the critical date of June 4, 1997; *i.e.*, one year before CollegeNET first applied for the '042 and '278 Patents relating to ApplyWeb2.  XAP's evidence focused primarily on the conduct of James Wolfston, CollegeNET's founder and principal officer.

## **INEQUITABLE CONDUCT STANDARDS**

"A patent may be rendered unenforceable for inequitable conduct if an applicant *with intent to mislead or deceive* the examiner, fails to disclose *material information* or submits materially false information to the PTO during prosecution." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006)(emphasis added).  "The party asserting inequitable conduct must prove a threshold level of materiality and intent by *clear and convincing evidence*."  *Id.* (emphasis added).  Under a "balancing" procedure, a stronger showing of one factor, such as "intent to deceive" will allow a "lesser showing of the other"; *i.e.*, materiality.  *Id.*

If the court, however, finds by clear and convincing evidence that a nondisclosure or misrepresentation was not made

5 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

n/a

with an intent to deceive, the court need not address the issue of materiality. *See Allen Archery, Inc. v. Browning Mfg. Co.,* 819 F.2d 1087, 1094 (Fed. Cir. 1987)("Since we uphold the district court's findings that the nondisclosure was not intentional, it is not necessary to consider the finding of non-materiality."). *See also Sanofi-Synthelabo v. Apotex, Inc.,* 470 F.3d 1368, 1381 n.8 (Fed. Cir. 2006)("Because *both* materiality and intent are required to establish inequitable conduct, we need not address the materiality of the purported false statement or omissions. . . .")(emphasis added).

**<u>Materiality - Intent to Deceive</u>.**

Information is "material" if "a reasonable examiner would have considered such information important in deciding whether to allow the application." *Eisai Co. Ltd. v. Dr. Reddy's Lab.,* 533 F.3d 1353, 1360 (Fed. Cir. 2008).

"To satisfy the 'intent' prong for unenforceability, 'the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.'" *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988)(*en banc*)(*citing Norton v. Curtiss,* 433 F.2d 779 (Cust. & Pat. APP. 1970)).  "*Gross negligence is not sufficient.  This is a high bar*."  *Id.* (Internal citations omitted)(emphasis added).

6 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

A.  <u>Prior Art Disclosure - Anticipation</u>.

35 U.S.C. § 102 provides:

> A person shall be entitled to a patent unless-
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this country or a foreign country, before the invention thereof by the applicant for the patent, or
>
> (b) the invention was patented or described in this country or a foreign country, more than one year prior to the date of the application for patent in the United States . . . .

To prove a claim is anticipated under 35 U.S.C. § 102(b), defendants must present clear and convincing evidence that a single prior art reference discloses, either expressly or inherently, each limitation of the claim. *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992).

B.  <u>On-Sale Bar</u>.

The on-sale bar to a patent applies if (1) "the product [is] the subject of a commercial offer for sale" and (2) "the invention [is] ready for patenting" in that it has been "reduc[ed] to practice" or "drawings or other descriptions of the invention sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff v. Wells Elec., Inc.*, 525 U.S. 55, 67 (1998). Any on-sale bar must be proved by clear

7 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

and convincing evidence.  *Poly-America, L.P. v. GSE Lining Tech.*, 383 F.3d 1303, 1308 (Fed. Cir. 2004).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. Intent to Deceive.

The Court finds XAP has failed to establish by clear and convincing evidence that CollegeNET, through Jame Wolfston or others, intended to deceive the PTO during the 1998-2001 application proceedings relating to the '042 and '278 Patent applications or during the subsequent 2007-08 reexamination proceedings for the '042 Patent.

This finding is based on the Court's conclusion that Wolfston was and has been throughout this lengthy litigation a credible witness and, thus, truthfully testified when he denied any intent to deceive the PTO.  The Court has had many opportunities to observe and to listen to Wolfston testify over a five-year period.  The Court heard Wolfston testify in three separate trials, reviewed his Declarations in multiple summary-judgment submissions, and observed his demeanor in court off of the witness stand on many more occasions.  The Court notes the historical record is not perfect, and there is evidence that suggests Wolfston has made some inconsistent statements along the way, including advertising and sales pitches that do not match up squarely with statements that are in the prosecution history.

8 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

Although viewing Wolfston's inconsistent statements in hindsight could give rise to an inference that Wolfston lied or destroyed evidence to hide material facts, the Court declines to draw such inferences after weighing and evaluating the record as a whole. In short, the Court does not find any clear or convincing evidence that CollegeNET, through Wolfston or others, intended to deceive the PTO or this Court.

Accordingly, on this record, the Court finds XAP has failed to prove by clear and convincing evidence that CollegeNET and/or Wolfston intended to deceive the PTO in the initial patent-application process on the '042 and '278 Patents or on reexamination of the '042 Patent.

**II.   Materiality.**

In light of the Court's finding that XAP failed to prove by clear and convincing evidence that CollegeNET intended to deceive the PTO, the Court need not resolve the issue whether any particular nondisclosure or inconsistent statements to the PTO was material to the issuance of those Patents.  *See Allen Archery,* 819 F.2d at 1087.

Nevertheless, because the materiality of the alleged nondisclosures and/or misrepresentations to the PTO regarding the capabilities of the prior art (ApplyWeb1 and the Smart Loan program) compared to the patent claims in ApplyWeb2 has been the subject of substantial expert evidence from both sides throughout

this litigation, the Court notes it has significant doubts as to the persuasiveness of XAP's evidence on this issue. In particular, the Court concludes the evidence presented by CollegeNET's expert, David Maier, and those employees and former employees of CollegeNET who were involved in the development of ApplyWeb1, Smart Loan, and ApplyWeb2, is far more persuasive than the evidence submitted by XAP's expert, Barbara Frederiksen.

Frederiksen first submitted a Declaration dated April 11, 2006, in support of XAP's opposition to CollegeNET's Motion for Partial Summary Judgment against XAP's Inequitable Conduct Counterclaim Defense. Frederiksen asserted ApplyWeb1 reduced to practice all of the elements of Claims 1 and 21 of the '278 Patent before the June 4, 1997, critical date. Based on her review of development source code for ApplyWeb1, Frederiksen opined that ApplyWeb1, *inter alia*, was able to do the following at least one year before the critical date: Store student data in a relational database; share data in college-admissions applications with different institutions; process multi-page applications; use and store metadata for purposes of data validation; and make changes to college-application admission forms without changing the program code (*i.e.,* ApplyWeb1 application forms were not hard-coded and had the capacity to input application information from students in a form specified by the particular college). Frederiksen did not offer an opinion

10- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

as to whether the features she found in the development source code for ApplyWeb1 were actually installed in ApplyWeb1.

Although CollegeNET asserted Frederiksen relied only on source code for ApplyWeb1 and never examined the ApplyWeb1 system that was in public use before the critical date, and, therefore, CollegeNET objected to the evidence, the Court overruled the objection because CollegeNET did not produce any direct evidence at the time to establish the developmental source codes relied on by Frederiksen in forming her opinion were not in public use or embodied in ApplyWeb1 before the critical date.  Accordingly, the Court found Frederiksen's Affidavit was sufficient to create a genuine issue of material fact existed as to whether ApplyWeb1 included the same features set forth in Claims 1 and 21 of the '278 Patent relating to ApplyWeb2.  *See* Opin. and Order at 63 (issued July 17, 2006).

Frederiksen repeated her opinions when she testified at the June 2008 bench trial.  She also offered a new, albeit belated, opinion that CollegeNET's contract with Sallie Mae regarding the Smart Loan program, which was executed before the critical date, incorporated features found in Claim 1 of the '042 Patent including customizing forms, verifying data, and receiving and storing the user's data.

At the June 2008 bench trial, Wolfston; technicians Michael Hitchcock and John Stedman, who worked on the ApplyWeb1 and

11- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

ApplyWeb2 systems; and Marguerite Daly, CollegeNET's Product Implementation Manager from 1997-99, testified the developmental codes that Frederiksen relied on in forming her opinions as to ApplyWeb1 were not in public use on or before the critical date. Although Hitchcock testified he was writing and testing developmental source codes for multi-page capability, data sharing, and relational database storage for use in ApplyWeb1, he persuasively explained those features were not in use in ApplyWeb1 before the critical date even though they were being tested. Tr. 431-32, 435, 447 (June 20, 2008). Stedman and Daly both testified credibly that ApplyWeb1 was not able to provide customized forms to colleges before the critical date. Instead colleges received the information on the applications by email in a "tagged" format and "retyped the information to get it into their computer systems." Tr. 251, 254, 274 (June 19, 2008); Tr. 454, 495, 495 (June 20, 2008).

In addition, the Court believed CollegeNET's expert, David Maier, who credibly contradicted Frederiksen's opinion that ApplyWeb1 was able to store data in a relational database, make changes in the application format while still preserving stored data without recoding the program, and adequately provide data checking and validation. Tr. 697-98, 703-06, 672-74 (June 26, 2008). Maier also testified the Smart Loan program involved customizing data to a single institution. Tr. 710-11. Unlike

12- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

ApplyWeb2, the Smart Loan program did not customize multiple forms to multiple institutions, deliver data in customized formats, share data, process payments, or possess the other patented features of ApplyWeb2.  On the contrary, Michael Ratliff, a CollegeNET employee who worked on the development of the Smart Loan program, testified the ApplyWeb2 program was developed independently of the Smart Loan program.  Tr. 594 (June 25, 2008).

Although unnecessary to its Verdict, the Court notes it was not persuaded by clear and convincing evidence that information regarding the prior art embodied in ApplyWeb1 or Smart Loan in the period before and immediately after the critical date of June 4, 1997, would have been material to the PTO when reviewing CollegeNET's application for the '042 and '278 Patents.  Indeed, the Court concludes the alleged prior art that Frederiksen relies on was still being tested, had not been perfected, and was not in public use in ApplyWeb1 or incorporated into the Smart Loan program before the critical date.

## CONCLUSION

For these reasons, the Court finds XAP has not proved by clear and convincing evidence that CollegeNET engaged in inequitable conduct in its original '042 and '278 Patent

13- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

Applications or in its Request for Reexamination of the '042 Patent.

Based on its Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a), the Court renders its Verdict in favor of CollegeNET and against XAP on XAP's Counterclaim for Inequitable Conduct.

IT IS SO ORDERED.

DATED this 1st day of October, 2008.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

14- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT